# BUTLER *v.* BOSTON AND SAVANNAH STEAMSHIP COMPANY.

## SAME *v.* SAME.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Nos. 244, 340. Argued April 10, 11, 1889.— Decided April 22, 1889.

The provision in Rev. Stat. § 4283, limiting the liability of the owner of a vessel, applies to cases of personal injury and death, as well as to cases of loss of or injury to property.

When proceedings have been properly begun in admiralty by the owner of a vessel to limit his liability under Rev. Stat. § 4283, and monitions have issued and been published, it becomes the duty of all claimants, whether for loss of property or injury to the person, or loss of life, to have the liability of the owner contested in that suit, and an allegation that the owner himself was in fault does not affect the jurisdiction of the court to entertain the cause of limited liability.

The steamboat inspection act of February 28, 1871, 16 Stat. 440, c. 100, Rev. Stat. Title LII, does not supersede or displace the proceeding for limited liability in cases arising under its provisions.

Whether the act of June 26, 1884, 23 Stat. 53, c. 121, § 18, is intended to be explanatory of the intent of Congress in its legislation concerning limited liability of shipowners, *quære*.

In the absence of an allegation to the contrary, it will be presumed in a limited liability case in admiralty that the captain and the first mate of a sea-going coast-wise steamer were licensed pilots.

The law of limited liability was enacted by Congress as part of the maritime law of the United States, and is coëxtensive in its operation with the whole territorial domain of that law.

While the general maritime law, with slight modifications, is accepted as law in this country, it is subject under the Constitution to such modifications as Congress may see fit to adopt.

The Constitution has not placed the power of legislation to change or modify the general maritime law in the legislatures of the States.

The limited liability act (Rev. Stat. 4282-4285) applies to the case of a disaster happening within the technical limits of a county in a State, and to a case in which the liability itself arises from a law of the State.

Whether a law of a State can have force to create a liability in a maritime case, within the dominion of the admiralty and maritime jurisdiction, where neither the general maritime law nor an act of Congress has created such liability, is not decided.

*The City of Norwich*, 118 U. S. 468, affirmed as to insurance money.

THE court, in its opinion, stated the case as follows:

The two cases are so intimately connected, both in the proceedings and in the questions arising therein, that it will be most convenient to consider them together. They arose out of the stranding, sinking and total loss of the steamship City of Columbus, on Devil's Bridge, near Gay Head, at the western extremity of Martha's Vineyard, and near the mouth of Vineyard Sound, on the 18th of January, 1884. Most of the passengers and cargo were lost, and amongst the passengers lost was Elizabeth R. Beach, a single woman, of Mansfield,

in the State of Connecticut. The appellants represent her, Nathaniel Beach being appointed administrator of her estate in Connecticut, Butler being appointed ancillary administrator in Massachusetts, and the other two appellants being, one an aunt, and the other a niece of the deceased, dependent on her for support. The appellees, The Boston and Savannah Steamship Company, were the owners of the ship.

Soon after the disaster occurred, and early in February, 1884, one Brown and one Vance commenced each of them an action at law against the steamship company, in the Superior Court of the county of Suffolk, in Massachusetts, to recover damages for losses alleged to have been sustained by them by means of the stranding and sinking of the vessel. Thereupon the steamship company, on the 18th of February, 1884, in order to obtain the benefit of the law of limited liability, filed a libel in the District Court of the United States for the District of Massachusetts, against the said Brown and Vance, and against all other persons who had suffered loss or damage by said disaster. This is one of the cases now before us on appeal. The libel was in the usual form of libels in causes of limited liability. It set forth the ownership of the vessel, the business in which she was employed, namely, as a passenger and freight steamship between Boston and Savannah, her sea-worthiness, her being well and thoroughly officered and manned and furnished and equipped as the law required. It stated that on the 17th of January, 1884, she left Boston on a voyage to Savannah, having on board about 83 passengers and considerable merchandise, a list of the former, as far as known, and a schedule of the latter, being annexed to the libel. It stated that whilst prosecuting said voyage, and while on the high seas, to wit, in or near Vineyard Sound, the steamship struck on the rocks near and off the shore at Gay Head, in Martha's Vineyard, in the District of Massachusetts, about half past three in the morning of January 18th, 1884, and in a very few minutes thereafter heeled over, filled with water, and sunk, becoming a total wreck and loss; that most of the passengers and crew, about 100 in number, were drowned and lost, those surviving claiming to have suffered great injury;

and that all the property and effects of the passengers and crew, and all the cargo on board, (except a small part, saved in a damaged condition, and of little value,) together with said steamship, its machinery, tackle, apparel and furniture, were destroyed and lost.

The libel propounded other articles, as follows, to wit:

"Fifth. All said great loss of life, injury and damage to persons on board, and loss of and damage to property, were occasioned and incurred without the privity or knowledge of the libellant, the owner of said steamship.

"Sixth. The libellant further alleges, that, as it is informed and believes, certain persons or corporations, owners or insurers of property on board, and lost or damaged by and at the loss of said steamship as aforesaid; certain other persons, who claim to have been on board said steamship at the time of the loss aforesaid, and to have suffered in consequence thereof injuries and damage to their persons and property; and still other persons, claiming to represent persons drowned and lost in said disaster, and claiming to be entitled to recover and receive large sums of money on account of the death of and injury to said persons so represented by them — all make, or may hereafter make, claim that the striking upon the rocks, and sinking and wreck of said steamship, and the loss of life, damage to persons and property aforesaid, were occasioned and incurred from the fault and neglect of the libellant, or its officers and agents, and that the libellant is liable and responsible to pay to them the loss and damages arising as aforesaid; all of which claims and allegations the libellant denies, and, on the contrary, it alleges that all such losses and damages were occasioned or incurred without its neglect, fault, privity, or knowledge, and, as it is informed and believes, without the neglect or fault of its officers or agents, or any of them."

"Eighth. The losses and damage to persons and property incurred and occasioned by the said stranding, sinking, and loss of said steamship, and the alleged claims and liabilities made against the libellant, by reason thereof, greatly exceed the amount or value of the interest of the libellant, as owner, in said steamship, her machinery, tackle, apparel, and furni-

ture, immediately after said loss, and in her freight then pending. Upon and after the happening of said loss, said steamship, her machinery, tackle, apparel, and furniture became a wreck and total loss, and, the libellant is informed and believes, were then practically worthless, and the libellant's interest therein became and was of little or no value. The gross freight then pending on the voyage of said steamship to Savannah was of the value of about $1,000.

"Ninth. The libellant, while not admitting but denying that it is under any liability for the acts, losses, and damages aforesaid, and desiring and claiming the right in this court to contest any such liability of itself or of said steamship, claims and is entitled to have limited its liability, as owner, therefor, (if any such liability shall hereafter be found to exist,) to the amount or value of its interest, as owner, in such steamship after said loss, and her freight then pending.

"Tenth. Said steamship, in her damaged and wrecked condition, now lies sunken near the shore at Gay Head, Martha's Vineyard, within this district, and within the jurisdiction and process of this honorable court."

The libellant thereupon claimed and petitioned that, in case it should be found that there was any liability for the acts, losses and damages aforesaid, upon said steamship City of Columbus, or the libellant as owner thereof, (which liability the libellant did not admit, but expressly and wholly denied, and desired in that court to contest,) such liability should in no event exceed the amount or value of the interest of the libellant, as owner, in said steamship and her freight then pending, as by law provided; and to that end the libellant prayed that all claims for loss, damage, or injury to persons or property by reason of the premises might be heard and determined in that court, and apportioned according to law, and that due appraisement might be ordered and made of the ship, her machinery and furniture, and of her pending freight at the time of the loss, offering to pay the appraised value into court or give proper stipulation therefor, and that monition in due form should issue against said Brown and Vance and any and all persons claiming damages by reason of the premises,

citing them to appear, etc., and that all actions and suits concerning the matters set forth might be restrained and enjoined.

Upon the filing of this libel a monition was duly issued and published, and an injunction against actions and suits was granted, issued and published. The monition was returnable to the first day of July, 1884.

Notwithstanding these proceedings the appellants, on the 27th of September, 1884, filed a libel against the steamship company, in the same District Court for the District of Massachusetts, to recover damages for the death of said Elizabeth R. Beach. This is the other suit now before us on appeal. After stating the engagement of passage by Miss Beach on the steamship from Boston to Savannah, the character of the vessel as a coast-wise sea-going steamship in the coasting trade, under enrolment and license, and the circumstances of the stranding and loss, and the drowning of Miss Beach, the libel of the appellants averred and charged that the disaster was caused by negligence on the part of those employed by the steamship company in managing the ship, and by inefficiency in the discipline of the officers and crew, and that no proper measures were taken to save the passengers. The libel further alleged that at the time of the disaster the second mate, one Harding, was in charge of the ship, and was not a pilot for those waters; that it was a part of his duty to take charge of the ship alternately with the first mate; that it was an omission of duty on the part of the owner to entrust to the second mate the charge of the ship without the aid of a special pilot; and that no pilot was on duty on the ship at the time of the accident. The libel further alleged that "there was not proper apparatus on the vessel for launching the boats;" "that the ship was not properly constructed in respect to bulkheads and otherwise;" and that there was unfitness, gross negligence or carelessness on the part of the servants and agents of the respondents engaged in navigating the ship, and in not taking proper measures to save the passengers, and as displayed in the inefficiency of the discipline of the officers and crew of the vessel; and that in respect to these matters there was negligence and carelessness on the part of the owner.

The libel further set out a statute of Massachusetts of the following purport, to wit:

"If the life of a passenger be lost, by reason of the negligence or carelessness of the proprietor or proprietors of a steamboat, or stage-coach, or of common carriers of passengers, or by the unfitness or gross negligence or carelessness of their servants or agents, such proprietor or proprietors and common carriers shall be liable in damages not exceeding five thousand nor less than five hundred dollars, to be assessed with reference to the degree of culpability of the proprietor or proprietors or common carriers liable, or of their servants or agents, and recovered in an action of tort, commenced within one year from the injury causing the death, by the executor or administrator of the deceased person, for the use of the widow and children of the deceased, in equal moieties, or, if there are no children, to the use of the widow, or, if no widow, to the use of the next of kin."

The libel further alleged that after the vessel struck, said Elizabeth R. Beach suffered great mental and bodily pain upon the vessel and was afterwards washed into the sea and drowned; that the value of her clothing and baggage lost was $150; and that by virtue of the premises and under the general admiralty jurisdiction of the United States the libellants were entitled to recover $50,000, and by virtue of the statute of Massachusetts, $5000.

The steamship company, thereupon, on the 10th day of October, 1884, filed an exception and plea to this libel, setting up in bar the record and proceedings of the cause of limited liability previously instituted by them in the same District Court, and then pending.

To meet this exception, the appellants, on the 16th of December, 1884, filed an amendment to their libel, by way of replication, in which they claimed the benefit of the Steamboat Inspection Act, passed February 28, 1871, (Title LII of the Revised Statutes of the United States,) which makes many regulations respecting the steam machinery and apparatus of steam vessels of the United States in the merchant service, navigating the waters of the United States, and respecting

their construction and manner of lading and accommodating passengers and merchandise, and the officers and crews with which they are to be manned, and requires sea-going steamers in the coasting trade when under way and not on the high seas, to be under the control and direction of pilots licensed by the steamboat inspectors, imposes penalties for loss of life through negligence and inattention, and gives damages to the full amount against the vessel and her master and owner to persons injured, if the injury happens through any neglect or failure to comply with the provisions of the law, or through any known defects or imperfections of the steaming apparatus, or of the hull. Rev. Stat. Title LII, *passim*, §§ 4401, 4493. The appellants averred that the City of Columbus was subject to this law, and when the catastrophe happened was within the waters of the State of Massachusetts, and not upon the high seas, and not under the control of a licensed pilot. They further averred that there was connivance, misconduct, or violation of law on the part of the owner in not providing or procuring the vessel to be under the control and direction of a licensed pilot, and that there was misconduct, negligence and inattention to duty on the part of the captain, second mate, or other persons employed on the vessel, by which connivance, misconduct and negligence the life of said Elizabeth R. Beach was destroyed.

On the same day, the 16th of December, 1884, the appellants appeared to the libel of the steamship company in the cause of limited liability, and filed a pleading which they entitled an Answer, Petition and Exceptions, and by which they set up substantially the same matter as had been averred in their libel and the amendment thereto; and in addition, they alleged that at the time of the disaster the steamer and her freight were substantially insured, and that the owners had received, or were entitled to receive, a large amount of money for said insurance, and would thereby be substantially indemnified for the loss of vessel and freight.

Afterwards, on the 19th of January, 1885, the appellants moved in the same cause that the steamship company be ordered to pay into court the said insurance money. To this

motion the company filed a written reply in which they set up the fact that in pursuance of an order of the court they had entered into stipulation to pay into court the amount of the appraised value of their interest in the ship and freight. They further averred that, in pursuance of a covenant made at the time of their purchasing the said steamship, in the mortgage given for the purchase money, all the insurance procured by them had been assigned and made payable to the vendors and mortgagees, for whose benefit and security the policies were kept on foot; and said parties had collected the insurance money, and applied it in part payment of the mortgaged notes, and the libellants, The Boston and Savannah Steamship Company, had not collected or received any part of it. To this answer the appellants filed an exception in the nature of a demurrer.

Upon these pleadings the parties agreed upon a statement of facts, which, after stating the titles of the two causes, was as follows, to wit:

"STATEMENT OF AGREED FACTS.

"In the above entitled causes the following facts are agreed by the Boston and Savannah Steamship Company and John Haskell Butler, administrator, et al., party excepting to said libel of said company:

"First. All the allegations contained in the eleventh, twelfth, thirteenth, fourteenth, nineteenth, twenty-third and twenty-fourth articles of the answer, petition and exceptions of said John Haskell Butler, administrator, et al., in said suit, are true.

"Second. Except as relieved or affected by the Limited Liability Act of 1851 Rev. Stat. 4283-5 and the Rules of the United States Supreme Court thereunder, the libellant, ship-owner, is liable for all loss and damage caused by the stranding of said steamship 'City of Columbus.'

"Third. In respect to the cause of the disaster alleged, the respondents claim, in addition to the concession by libellant, the B. and S. Steamship Company, of negligence on the part of their agents and servants, as above agreed, that at the time of disaster the second mate was in charge of the ship; that he was not a pilot for the waters upon which the ship was then

going, and was not licensed as a pilot by the inspectors of steamboats; and that no pilot was on duty on said ship at the time of the disaster; and, further, that the disaster was owing to the unfitness, gross negligence, or carelessness of the servants or agents of the libellant, who were engaged in navigating the ship at the time of the disaster, so that the case was within § 6 of c. 73 of the Public Statutes of Massachusetts. The libellant denies all these allegations, and claims that they are immaterial to the issues of the cause, if true; and that the captain was in charge of the ship at the time of the disaster.

"Fourth. Said loss and damage were without the privity and knowledge of the libellant, the Boston and Savannah Steamship Company, the sole owner of said steamship.

"Fifth. Said steamship was a coast-wise, sea-going vessel, under enrolment, and was, at and before the time of loss, subject to all the laws and rules of navigation applicable to such vessels; and at the time of loss was on a voyage from Boston to Savannah, Georgia, and proceeding through Vineyard Sound, stranding on Devil's Bridge, off and near Gay Head, Martha's Vineyard. And to this extent the respondents, Butler et als., qualify any admission in their answer to the third article of the libel of the company; and the company qualify any averment pertinent thereto in said article.

"Sixth. After the filing of the libel or petition in this cause, the court caused due appraisement to be had of the amount or value of the interest of the libellant, as owner, in such ship and her freight for the voyage, and thereupon made an order for the giving of a stipulation, with sureties for the payment thereof, into court, whenever the same shall be ordered; and upon due compliance with this order the court issued a monition, February 28, 1884, against all persons claiming damages for any such loss, embezzlement, destruction, damage or injury, citing them to appear before the said court and make due proof of their respective claims at or before July 1, 1884, and public notice of such monition was given as required; and thereafter, on the application of said owner, the court made an order to restrain the further prosecution of all and any suit or suits against said owner in respect of any such claim or

claims, all as provided in the admiralty rules of the United States Supreme Court.

"Seventh. The Boston and Savannah Steamship Company is a corporation organized under the laws of the State of Massachusetts, and is located at Boston, in said State."

The following additional statement was agreed to in the action of the appellants, to wit:

"1. Except as relieved or affected by the Limited Liability Act of 1851, (Rev. Stat. §§ 4283–5,) and the Rules of the United States Supreme Court thereunder, the respondent, ship-owner, is liable for all loss and damage caused by the stranding of said steamship 'City of Columbus.'

"2. The respondent claims that the captain was in charge of the ship at the time of the disaster.

"3. Said loss and damage were without the privity and knowledge of the respondent, the Boston and Savannah Steamship Company, the sole owner of said steamship.

"4. Said steamship was a coast-wise, sea-going vessel, under enrolment, and was, at and before the time of loss, subject to all the laws and rules of navigation applicable to such vessels; and at the time of loss was on a voyage from Boston to Savannah, Georgia, and proceeding through Vineyard Sound, stranding on Devil's Bridge, off and near Gay Head, Martha's Vineyard."

The two causes were argued together upon the pleadings and these statements of fact; and on the 10th of April, 1885, the following decrees were made, to wit:

In the suit of the appellants the following decree was made:

"This cause was heard upon libel and respondent's exceptions thereto, and upon agreed facts; and it appearing to the court that the record alleged in said exceptions exists, it is thereupon ordered, adjudged and decreed that the exceptions be sustained, and the libel dismissed with costs."

In the limited liability cause the following decree was made:

"It is found and decreed by the court that the libellant is entitled to the limitation of liability for loss of life, and other damage, as claimed in said libel; and that evidence tending to establish the facts, claimed by the respondents in clause three

of the agreed facts on file, is immaterial, and therefore inadmissible, and that the allegations in the libellants' answer to respondents' motion that insurance money be paid into court are true; and it is thereupon ordered, adjudged and decreed by the court that the said respondents' exceptions to the libellants' answer to said respondents' motion that insurance money be paid into court, be overruled, and their said motion denied; and that the exceptions of said respondents to the libel be overruled, and their petition be dismissed."

These decrees were affirmed by the Circuit Court, and from the decrees of the latter court the present appeal was taken.

*Mr. Eugene P. Carver* and *Mr. Frank Goodwin* for appellants.

I. The limitation-liability act, Rev. Stat. §§ 4282–4287, does not apply to a claim for loss of life of a passenger, or for injuries suffered by him through negligence.

The law has a special regard for the rights of passengers carried by common carriers. It holds the carrier to the highest possible degree of care, and requires him to make good all damages suffered through want of it. *Pennsylvania Co.* v. *Roy*, 102 U. S. 451. A statute in derogation of this fundamental principle should be so expressed as plainly to show that this great rule is in terms and purpose departed from. This act does not in terms apply to passengers : and when the object of its enactment is considered, viz.: the diminution of the risks of ship-owners engaged in the transportation of cargoes, it is plain that it applies only to loss of property, and does not apply to persons at all.

Neither by the civil law nor the common law was there or is there a limitation of liability. The principle of such limitation appears to have arisen in the Middle Ages, and the origin thereof is set forth by Judge Ware in the case of *The Rebecca*, 1 Ware, 187; and Judge Ware's exposition has been accepted by the Supreme Court in *Norwich Co.* v. *Wright*, 13 Wall. 104. That the courts of the United States, down to the act of 1851, did not recognize the rule of the ancient or general

maritime law, but refused to adopt it either in admiralty or common law, see *Del Col* v. *Arnold*, 3 Dall. 333 ; *The Amiable Nancy*, 1 Paine, 111 ; *Pope* v. *Nickerson*, 3 Story, 465 ; *Hall* v. *Washington Insurance Co.*, 2 Story, 176 ; *New Jersey Steam Nav. Co.* v. *Merchants' Bank*, 6 How. 344, 435.

The history of the subject shows that the scope of the act. of Congress is confined to advancing the interests of commerce and trade, — the transportation of merchandise.

The first act on the subject was the Massachusetts act of 1818, derived from the English statute 7 Geo. II, c. 15. This was followed by a statute of Maine. The continuity between the acts of Massachusetts and Maine and the act of Congress, forming one chain in a system of legislation, is also recognized and enforced by the Supreme Court of the United States in *Norwich Co.* v. *Wright*, 13 Wall. 104.

This limited liability act is not to be extended, even in respect to goods, by construction. Mr. Justice Curtis held that it does not protect a vessel when the fire, which had burned up the goods, destroyed them after they had been landed from the vessel, and were on the wharf, in a case where there had been no delivery to consignee. Its application, in respect to fire, is only to goods lost or damaged through fire happening to or on board of the vessel. *Salmon Falls Manf. Co.* v. *The Tangier*, 6 Am. Law Reg. 504; *King* v. *Am. Trans. Co.*, 1 Flippin, 1 ; *The Egypt*, 25 Fed. Rep. 320 ; *The Mamie*, 5 Fed. Rep. 813 ; *S. C.* 105 U. S. 773 ; *S. C.* 110 U. S. 742 ; *Gibson* v. *Shufeldt*, 122 U. S. 27, 32.

In *Carroll* v. *Staten Island Railroad*, 58 N. Y. 126, the Court of Appeals of New York hold that the steamboat act of February 28, 1871, 16 Stat. 440, c. 100, is not to be construed in the light of the limited liability act of 1851; that "a narrow construction, in favor of ship-owners, of a statute enacted to secure the safety of passengers, is not justified on the ground that their common law liability as carriers of goods had, by a prior statute, made for the purpose of assimilating our legislation on the subject to that of England, been to some extent limited." See also *Dougan* v. *Champlain Transportation Co.*, 56 N. Y. 1 ; *Chamberlain* v. *Western Transportation*

*Co.*, 44 N. Y. 305; *Wallace* v. *Providence and Stonington Steamship Co.*, 14 Fed. Rep. 56; *The Garden City*, 26 Fed. Rep. 766.

The liability of owners is not restricted by act of Congress providing for the security of passengers on steamboats, and their liability is not confined to the acts of omission or commission therein declared to be negligent. The act does not operate to take away any common law liability. *Caldwell* v. *New Jersey Steamboat Co.*, 47 N. Y. 282; *Swarthout* v. *New Jersey Steamboat Co.*, 48 N. Y. 209; *Carroll* v. *Staten Island Railroad*, 58 N. Y. 126; *Navigation Co.* v. *Dwyer*, 29 Texas, 376.

There are a few decisions beside that of Judge Benedict in *The Epsilon*, 6 Ben. 378, in which the limited liability act has been extended beyond cases of property; and, with the exception of the Rhode Island case, *Rounds* v. *Providence &c. Steamship Co.*, 14 R. I. 344, they are, all of them, District Court cases, or the decisions of District Court judges; and this Rhode Island case, together with most of the others, merely imports to follow the decision of Judge Benedict in *The Epsilon* as the authority upon the questions. The cases are: *In re Long Island &c. Trans. Co.*, 5 Fed. Rep. 599; *The Alpena*, 8 Fed. Rep. 280; *The Amsterdam*, 23 Fed. Rep. 112; *Briggs* v. *Day*, 21 Fed. Rep. 727; *Craig* v. *Continental Ins. Co.*, 26 Fed. Rep. 798.

An examination of these cases will show that the distinction between injury to a passenger and injury to a member of the public, toward whom the ship owed no peculiar obligation, has not always been observed in following the decision in *The Epsilon*. *The Epsilon* was not the case of a passenger, but of a man killed by the explosion of the vessel's boiler, while he was on land, standing on a pier. There is nothing in the case to show that other persons on board were passengers. See *Ex parte Phœnix Ins. Co.*, 118 U. S. 610; *Johnson* v. *Chicago & Pacific Elevator Co.*, 119 U. S. 388, 397. The decision in *The Epsilon* rests on two grounds: (1) The words of the statute: (2) The Continental Codes.

1. As to the words of the statute:

The words of the United States statute of 1851, c. 43, § 3, 9 Stat. 635, from which § 4283 of the Revised Statutes is taken, are as follows: "That the liability of the owner or owners of any ship or vessel, for any embezzlement, loss or destruction, by the master, officers, mariners, passengers, or any other person or persons, of any property, goods or merchandise, shipped or put on board of such ship or vessel, or for any loss, damage or injury by collision, or for any act, matter or thing, loss, damage or forfeiture, done, occasioned or incurred without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner or owners respectively, in such ship or vessel, and her freight then pending." The differences between this expression of the law and that of § 4283 are apparently mostly formal; but there is one change which may be substantial.

The form in the Revised Statutes omits the plural of owner, and the word "ship," and comprehends the persons offending, under the phrase, " by any person." But one substantial change seems to have been made. Instead of the word "loss," in the phrase, " act, matter or thing, loss, damage or forfeiture," in the act of 1851, we have in the Revised Statutes the word "lost" substituted. Omitting the mere punctuation mark after the word "thing," we get as the present expression of the law, "thing lost;" and if this was an intentional change, it shows the more clearly the intention to apply the act to things, and not to persons. Indeed, the adjective "lost" can have no signification, except as connected with "thing."

The rule of construction in such cases has been declared in *United States* v. *Bowen,* 100 U. S. 508, as follows: " The Revised Statutes must be treated as the legislative declaration of the statute law on the subjects which they embrace, on the first day of December, 1873. When the meaning is plain the courts cannot look to the statutes which have been revised to see if Congress erred in that revision, but may do so when necessary to construe doubtful language used in expressing the meaning of Congress." In that case the word "such" had been interpolated in the revision, which altered the meaning of the statute as it stood prior to the revision; but, as the

language of the revision was plain, the court construed the law as it read in the revision. So, also, in *Cambria Iron Co.* v. *Ashburn*, 118 U. S. 54. And so here, the word "lost" as here used is entirely plain. There is nothing doubtful in the language as it stands. And furthermore, and in addition, we say, that in the light of the history of these statutes it is fairly inferrible that this was an intentional change. But, however that may be, the meaning of the revision is plain. See, further, *The Montana*, 22 Fed. Rep. 715; *Thomassen* v. *Whitwill*, 12 Fed. Rep. 891; *The Marine City*, 6 Fed. Rep. 413; *McDonald* v. *Hovey*, 110 U. S. 619; *Pentlarge* v. *Kirby*, 20 Fed. Rep. 898.

2. As to the Continental Codes, it is sufficient to refer to the language of the court in *The Lottawanna*, 21 Wall. 558, where this court says: "*To ascertain, therefore, what the maritime law of this country is, it is not enough to read the French, German, Italian, and other foreign works on the subject, or the codes which they have framed;* but we must have regard to our own *legal history,* Constitution, legislation, usages and adjudications as well. . . . The scope of the maritime law and that of commercial regulation are not coterminous, it is true, but the latter embraces much the largest portion of ground covered by the former. Under it Congress has regulated the registry, enrolment, license, and nationality of ships and vessels; the method of recording bills of sale and mortgages thereon; the rights and duties of seamen; *the limitations of responsibility of ship-owners for the negligence and misconduct of their captains and crews;* and many other things of a character truly maritime."

In *Norwich Co.* v. *Wright*, 13 Wall. 104, this court says of this law, that its great object was to encourage ship-building, and to induce capitalists to invest money in this branch of industry. See, also, *Moore* v. *Am. Trans. Co.*, 24 How. 1; *Simpson* v. *Story*, 145 Mass. 497. That was the object of the law, and not the encouragement of the transportation of human beings. Respecting the latter traffic Congress has legislated in an opposite direction, passing stringent laws for preserving the security of passengers on steam-vessels. Rev. Stat. §§ 4424–4426, 4463–4500; 22 Stat. 346, c. 441; Id. 186, c. 374; *Hart-*

*ranft* v. *Du Pont*, 118 U. S. 223; *The Strathairly*, 124 U. S. 558; *The Hazel Kirke*, 25 Fed. Rep. 601; *The Rosa*, 25 Fed. Rep. 601; *The Idaho*, 29 Fed. Rep. 187; *The Pope Catlin*, 31 Fed. Rep. 408; *Oyster Police Steamers*, 31 Fed. Rep. 763.

The purpose of the act of 1851 being as above shown, and the method of carrying it out being also as above shown to be in accordance with the general maritime law, let us examine how that purpose is provided for by the statute.

The Revised Statutes of the United States provide (§ 4284) as follows: "Whenever any such embezzlement, loss, or destruction is suffered by several freighters or owners of goods, wares, merchandise, or any *property* whatever, on the same voyage, and the whole value of the vessel and her freight for the voyage is not sufficient to make compensation to each of them, they shall receive compensation from the owner of the vessel in proportion to their respective losses; and for that purpose the freighters and [*owner*] [owners] of the property, and the owner of the vessel, or any of them, may take the appropriate proceedings in any court, for the purpose of apportioning the sum for which the owner of the vessel may be liable among the parties entitled thereto."

Section 4285: "It shall be deemed a sufficient compliance, on the part of such owner, with the requirements of this Title relating to his liability for any embezzlement, loss, or destruction of any *property, goods, or merchandise*, if he shall transfer his interest in such vessel and freight, for the benefit of such claimants, to a trustee, to be appointed by any court of competent jurisdiction, to act as such trustee for the person who may prove to be legally entitled thereto; from and after which transfer all claims and proceedings against the owner shall cease."

So it is only in case of damage to "*property*" that any parties may take "appropriate proceedings in any court" for the purpose of apportioning the sum for which the owner may be liable; and it is only in the case of destruction, etc., of "*property, goods, or merchandise*," that the owner of the vessel shall be allowed to make the transfer through a court of Admiralty.

Is not this fairly conclusive upon the question? Thus it is

certain that the libel of this company cannot be sustained as against these passengers; and it would seem to be very clear that if Congress had intended that the ship-owner should plead the act in bar of proceedings instituted against him by a passenger, the act would have provided a means to enable him to take "appropriate proceedings" for an apportionment, and for the surrender of his vessel as well, as in the case of injury to goods or damage to property by collision. *Walker* v. *Boston Insurance Co.*, 14 Gray, 288; *The Scotland*, 105 U. S. 24; *Peoples' Ferry Co.* v. *Beers*, 20 How. 393; *The St. Lawrence*, 1 Black, 522; *Insurance Co.* v. *Dunham*, 11 Wall. 1.

Whenever the Supreme Court has applied the general maritime law to cases arising before them, it will be observed that they have limited themselves to that. The growth of admiralty jurisprudence within this country has been in the direction of a freedom from the confined limits within which, owing to the well-known jealousy of the courts of common law in England, the law of the admiralty was in that country restricted. But, while our admiralty law has expanded and developed, and this by the application of the general maritime law, our Supreme Court has carefully kept it within the boundaries of the law and usages of this country, and has not imported the modern codes into our system. *The General Smith*, 4 Wheat. 438; *The St. Jago de Cuba*, 9 Wheat. 409; *United States* v. *La Vengeance*, 3 Dall. 297; *United States* v. *The Sally*, 2 Cranch, 406; *United States* v. *The Betsey and the Charlotte*, 4 Cranch, 443; *The Samuel*, 1 Wheat. 9; *The Octavia*, 1 Wheat. 20; *Hobart* v. *Drogan*, 10 Pet. 108; *New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 6 How. 344; *Rich* v. *Lambert*, 12 How. 347; *The Genesee Chief*, 12 How. 443; *Ward* v. *Peck*, 18 How. 267; *Dupont* v. *Vance*, 19 How. 162; *The China*, 7 Wall. 53; *The Merrimac*, 14 Wall. 199; *Sherlock* v. *Alling*, 93 U. S. 99; *The Scotia*, 14 Wall. 170; *The Alabama and The Gamecock*, 92 U. S. 695; *The Atlas*, 93 U. S. 302; *The Virginia Ehrman and The Agnese*, 97 U. S. 309; *The North Star*, 106 U. S. 17.

In none of these cases have the modern codes been imported into our system of laws. The court has aimed to apply the general maritime law of the world, when it could do so with-

out infringing upon the law and usages of this country. Beyond that it has in no case undertaken to go.

But if the act limiting liability could otherwise be held to apply to loss of life or injury to passengers, the act of Congress of 1871, 16 Stat. 440, c. 100, would take this case out of its operation. This is the same act of 1871 as that passed upon in *Carroll* v. *Staten Island Railroad Co. (supra).*

Section 51 thereof, (Rev. Stat. § 4401,) provides that "every coast-wise sea-going steam vessel, subject to the navigation laws of the United States, and to the rules and regulations aforesaid, not sailing under register, shall, when under way, except on the high seas, be under the control and direction of pilots licensed by the inspectors of steamboats."

This provision (as well as all the other provisions of this act) does not restrict the common law liability, or diminish it.

The lost steamship was a coast-wise, sea-going steam vessel, under enrolment, subject to all the laws and rules of navigation applicable to such vessels; and at the time of the loss was on a voyage from Boston to Savannah, and was wrecked in Vineyard Sound, upon the shore of Martha's Vineyard, Massachusetts, and when the catastrophe happened she was within the waters of Massachusetts, and was not upon the high seas. If there was an omission in Vineyard Sound to have a pilot in charge, that would likewise be an infringement of the act. But if the omission to have a pilot in charge did not come under the act, yet such omission would be none the less fault or negligence at the common or by the maritime law.

One of the issues raised upon the agreed statement of facts is, whether the ship was under the control and direction of a licensed pilot at the time of the disaster. And it there appears that the claim of the company is that the captain was in charge of the ship at that time, and not the second mate, who is claimed not to have been a pilot. And it further there appears that the ship was a coast-wise, sea-going steam vessel, under enrolment, and on a voyage from Boston to Savannah, and while proceeding through Vineyard Sound stranded on Devil's Bridge, off and near Gay Head, Martha's Vineyard. Thus it appears that she was not proceeding on the high seas, but

within the waters of Massachusetts, so that a pilot should have been in charge under the act of 1871. So proceeding, if she was not under the control and direction of a licensed pilot, there was an infringement of the act of 1871.

Then, again, it is conceded that there was negligence on the part of those employed by the company in the grounding and wrecking, and that the steamship proceeded nearer the shore than was prudent or skilful. If, as the company contend, the captain was in charge of the ship, the case falls equally within the provisions of the law, as is above set forth. The effect of the act of 1871 upon the limited liability act does not appear to have been argued or considered in *The Garden City*, 26 Fed. Rep. 766, although both acts are considered in that case.

II. A statute of the State of Massachusetts, providing for recovery in the case of loss of life, is relied on. That law, as contained in the Public Statutes of Massachusetts, c. 73, § 6, is, and at the time of the disaster was, as follows: "If the life of a passenger is lost by reason of the negligence or carelessness of the proprietor or proprietors of a steamboat or stage-coach, or of common carriers of passengers, or by the unfitness or gross negligence or carelessness of their servants or agents, such proprietor or proprietors and common carriers shall be liable in damages not exceeding five thousand nor less than five hundred dollars, to be assessed with reference to the degree of culpability of the proprietor or proprietors or common carriers liable, or of their servants or agents, and recovered in an action of tort, commenced within one year from the injury causing the death, by the executor or administrator of the deceased person, for the use of the widow and children of the deceased, in equal moieties; or, if there are no children, to the use of the widow; or, if no widow, to the use of the next of kin."

The tort here complained of is a marine tort, and, therefore, cognizable by a court of Admiralty. So also is the breach of contract between the carrier and the passenger the breach of a maritime contract. *Chamberlain* v. *Chandler*, 3 Mason, 242; *The City of Brussels*, 6 Ben. 370; *Sherlock* v. *Alling*, 93 U. S. 99.

Upon either basis, therefore, the statute providing for recovery can be relied on and enforced.

Courts of Admiralty enforce other statutes in respect to matters which are maritime, and as such come within the admiralty jurisdiction; and no reason is perceived why statutes of the kind here relied upon should not likewise be enforced by those courts.

Familiar illustrations of this are the cases of state statutes in favor of material men, and for pilotage: *The Lottawanna,* 21 Wall. 558; *The America,* 1 Lowell, 176; *The California,* 1 Sawyer, 463; *The Glenearne,* 7 Fed. Rep. 604. See also *The Shady Side, The Morrisania,* 23 Fed. Rep. 731; *Woodruff* v. *One Covered Scow,* 30 Fed. Rep. 269; *The Craigendoran,* 31 Fed. Rep. 87; and statutes of the United States for tonnage dues, *The George T. Kemp,* 2 Lowell, 485; and the case of the common law lien of a shipwright, *The B. F. Woolsey,* 7 Fed. Rep. 108; *The Marion,* 1 Story, 68; *The Julia L. Sherwood,* 14 Fed. Rep. 590; *The Two Marys,* 10 Fed. Rep. 919; *S. C.* 16 Fed. Rep. 697, which arise outside of the admiralty law as much so as does a right or a remedy conferred by a statute, but also come within the province of a court of Admiralty to enforce.

But whatever may be regarded as the law touching the operation of state statutes providing for recovery for loss of life, when the disaster from which the death results occurs out of the jurisdiction of the court, or where the defendant is not an inhabitant of the State which enacted the statute, the only question which arises here is, as to the application of a Massachusetts statute to an inhabitant of that State, and in respect to a disaster which occurred within the limits of the State. The Boston and Savannah Steamship Company is a Massachusetts corporation, and the disaster was within the limits of that State, and that fact is averred by this company in the tenth article of their libel, and the contract for carriage was made at Boston, Mass. See *Ex parte McNeill,* 13 Wall. 236; *Reynolds* v. *Crawfordsville Bank,* 112 U. S. 405; *Broderick's Will,* 21 Wall. 503; *Holland* v. *Challen,* 110 U. S. 15; *Holmes* v. *O. & C. Railway,* 5 Fed. Rep. 75; *The Highland Light,* Chase, Dec. 150; *The Garland,* 5 Fed. Rep. 924; *The E. B. Ward, Jr.,* 17 Fed. Rep. 457; *S. C.* 23 Fed. Rep. 900; *Armstrong* v. *Beadle,*

.5 Sawyer, 484; *In re Long Island Transportation Co.*, 5 Fed. Rep. 599; *Hrebrik* v. *Carr*, 29 Fed. Rep. 298; *Ladd* v. *Foster*, 31 Fed. Rep. 827; *The Manhasset*, 18 Fed. Rep. 918; *Oleson* v. *The Ida Campbell*, 34 Fed. Rep. 432; *Sherlock* v. *Alling*, 93 U. S. 99; *Steamboat Co.* v. *Chase*, 16 Wall. 522; *Dennick* v. *Railroad Co.*, 103 U. S. 11; *Buford* v. *Holley*, 28 Fed. Rep. 680; *Lorman* v. *Clarke*, 2 McLean, 568; *Robostelli* v. *New York, New Haven &c. Railroad*, 34 Fed. Rep. 719; *Ex parte Gordon*, 104 U. S. 515.

Since the decision of this court in *The Harrisburg*, 119 U. S. 199, it would seem that damages for loss of life cannot be recovered under the general maritime law independently of a statutory provision.

The thirteenth article of the libel of Butler *et al.*, and the twenty-third article of the answer, petition and exceptions of Butler *et al.*, aver that the deceased suffered great mental and bodily pain and misery; for which in both of the said pleadings damages are claimed. The proceedings in the cases at bar are *not* wholly for loss of life.

The Supreme Court of New Hampshire, in a recent case decided in March, 1888, but not yet reported in N. H. Reports, *Clark* v. *City of Manchester*, has held that in death by drowning, an inference may always be drawn that the deceased suffered pain both mental and physical, even if there be not any evidence of the circumstances surrounding the death, and especially if the water was stagnant, muddy or slimy. [Other points were argued by counsel, which, in view of the opinion of the court, have become unimportant.]

*Mr. Charles Theodore Russell, Jr.,* for appellee.

Mr. Justice Bradley delivered the opinion of the court.

We will first consider the principal point taken in the cause of damage, instituted by the appellants, to which the owners of the steamship pleaded the pendency of the proceedings in the cause of limited liability; and will then discuss the questions presented in both causes, and those which are peculiar to the cause last named.

In the former cause the principal point raised was, that the law of limited liability does not apply to personal injuries, and hence that the appellants were not bound to litigate their claim in the limited liability cause; but had a right to file a separate and independent libel. The appellants in their brief say:

·"The single question thus presented is, whether the act limiting the liability of ship-owners applies to damages for personal injury and damages for loss of life, and thus deprives those entitled to damages of the right to entertain suit for recovery, provided that the ship-owner has taken appropriate proceedings by libel or petition to limit his liability; in other words, whether the said act extends to all damages for personal injury, and damages for loss of life."

It is virtually conceded that if the limited liability act applies to damages for personal injury, and damages for loss of life, the proceedings taken by the steamship company by their libel for limited liability were a bar to the appellants' action; and that the controversy between the parties should have been settled in that cause. We shall, in the first place, therefore, examine that question.

If we look at the ground of the law of limited responsibility of ship-owners, we shall have no difficulty in reaching the conclusion that it covers the case of injuries to the person as well as that of injuries to goods and merchandise. That ground is, that for the encouragement of ship-building and the employment of ships in commerce, the owners shall not be liable beyond their interest in the ship and freight for the acts of the master or crew done without their privity or knowledge. It extends to liability for every kind of loss, damage and injury. This is the language of the maritime law, and it is the language of our statute which virtually adopts that law. The statute declares that "the liability of the owner of any vessel, for any embezzlement, loss or destruction, by any person, of any property, goods or merchandise, shipped or put on board of such vessel, or for any loss, damage or injury by collision, or for any act, matter, or thing, [loss,] damage or forfeiture, done, occasioned or incurred, without the privity or knowledge

of such owner, or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel and her freight then pending." (Rev. Stat. 4283. The word "loss" in the statute of 1851 is printed "lost" in the Revised Statutes, evidently by mistake.) This is the fundamental section of the law. On this section the whole provision turns. And nothing can be more general or broad than its terms. The "*liability* . . . shall in no case exceed," etc. It is the liability not only for loss of goods, but for any injury by collision, or for any act, matter, loss, damage or forfeiture whatever, done or incurred.

Various attempts have been made to narrow the objects of the statute, but without avail. It was first contended that it did not apply to collisions. This pretence was disallowed by the decision in *Norwich Company* v. *Wright*, 13 Wall. 104. Next it was insisted that it did not extend to cases of loss by fire. This point was overruled in the case of *Providence & New York Steamship Co.* v. *Hill Man'f'g Co.*, 109 U. S. 578. Now it is contended that it does not extend to personal injuries as well as to injuries to property. If this position can be maintained the value of the act, as an encouragement to engage in the shipping business, will be very essentially impaired. The carriage of passengers in connection with merchandise is so common on the great highway between the old and new continents at the present day, that a law of limited liability, which should protect ship-owners in regard to injuries to goods and not in regard to injuries to passengers, would be of very little service in cases which would call for its application.

The section of the law which follows the main section in the original act, namely, § 4 of the act of 1851, (constituting the two sections of 4284 and 4285 of the Revised Statutes,) has been referred to for the purpose of showing that the legislature had in view injuries to property only. That section provides that if there are several owners of merchandise damaged or lost on the voyage, and the value of the ship and freight is not sufficient to pay them all, the proceeds shall be divided *pro rata* between them, and gives to either party the right to

take the proper proceedings in court to procure distribution to be made. The section is an appendix to the principal section which limits the liability, and is added to it for the purpose of enabling the parties interested to carry out and secure the objects of the statute in the most equitable manner. It has respect to the legal proceedings to be had for carrying the act into effect. It prescribes the rule, namely, *pro rata* distribution. Mention is only made, it is true, of owners of property lost or injured; but surely that cannot have the effect of doing away with the broad and general terms of the principal enactment, stated with such precision and absence of reserve. It is more reasonable to interpret the fourth section as merely instancing the owners of lost property for the purpose of illustrating how the proceeds of the ship and freight are to be distributed, in case of their being insufficient to pay all parties sustaining loss. The observations of Chief Justice Durfee, in delivering the opinion of the Supreme Court of Rhode Island, in the case of *Rounds* v. *Prov. & Stonington Steamship Co.*, 14 R. I. 344, 347, seem to us very sensible and to the point. That was a case of injury to the person. The Chief Justice says: "There would be no doubt upon this point were it not for the next two sections, which make provision for the procedure for giving effect to the limitation. These sections, if we look only to the letter, apply only to injuries and losses of property. The question is, therefore, whether we shall by construction bring the three sections into correspondence by confining the scope of § 4283 to injuries and losses of property, or by enlarging the scope of the two other sections so as to include injuries to the person. We think it is more reasonable to suppose that the designation of losses and injuries in §§ 4284 and 4285 is imperfect, a part being mentioned representatively for the whole, and consequently that those sections were intended to extend to injuries to the person as well as to injuries to property, than it is to suppose that § 4283 was intended to extend only to the latter class of injuries, and was inadvertently couched in words of broader meaning. The probable purpose was to put American ship-owners on an equality with foreign ship-owners in this regard, and in the great maritime

countries of England and France the limitation of liability extends to personal as well as to property injuries and losses."

We may also refer to the opinion of Judge Benedict in the case of *The Epsilon*, 6 Ben. 378, as containing a very full and able discussion of the question. It was the first decision made upon this particular subject.

We have no hesitation in saying that the limitation of liability to the value of the ship and freight is general; and that when the proceeds of the latter are insufficient to pay the entire loss, the object of the fourth section of the old law (the 4284th of the Revised Statutes) is mainly to prescribe a *pro rata* distribution amongst the parties who have sustained loss or damage. We think that the law of limited liability applies to cases of personal injury and death as well as to cases of loss of or injury to property.

This conclusion is decisive of the controversy arising on the libel of the appellants. For if the law applies to the case of personal injuries, it was then the duty of the libellants to have appeared in the cause of limited liability instituted by the owners of the vessel, and to have contested there the question whether, in the particular case, the owners were or were not entitled to the benefit of the law. Had the action of the appellants been first commenced, it would have been suspended by the institution of the limited liability proceedings; and the very object of those proceedings was, not only to stop the prosecution of actions already commenced, but to prevent other suits from being brought. Allegations that the owners themselves were in fault cannot affect the jurisdiction of the court to entertain a cause of limited liability, for that is one of the principal issues to be tried in such a cause. The beneficent object of the law in enabling the ship-owner to bring all parties into concourse who have claims arising out of the disaster or loss, and thus to prevent a multiplicity of actions, and to adjust the liability to the value of the ship and freight, has been commented on in several cases that have come before this court, notably in the cases of *Norwich Company* v. *Wright*, 13 Wall. 104, and *Providence and New York Steamship Co.* v. *Hill Man'f'g Co.*, 109 U. S. 578. It is unnecessary to enter again upon the discussion here.

It is contended, however, that the act of February 28, 1871, entitled "An act to provide for the better security of life on board of vessels propelled in whole or in part by steam, and for other purposes," 16 Stat. 440, supersedes or displaces the proceeding for limited liability in cases arising under its provisions. We do not see the necessity of drawing any such conclusion. The act itself contains no provision of the kind. It requires certain precautions to be taken by owners of coasting steam-vessels and those engaged in navigating them to avoid as far as possible danger to the lives of passengers. Amongst other things, by the 51st section of the act, (Rev. Stat. § 4401,) it is provided that all coast-wise sea-going steam vessels "shall, when under way, except on the high seas, be under the control and direction of pilots licensed by the inspectors of steamboats." By the 43d section (Rev. Stat. § 4493) it is declared that whenever damage is sustained by a passenger or his baggage, the master and owner, or either of them, and the vessel, shall be liable to the full amount of damage if it happens through any neglect or failure to comply with the provisions of the act, or through known defects, etc. This is only declaring in the particular case, what is true in all, that if the injury or loss occurs through the fault of the owner, he will be personally liable, and cannot have the benefit of limited liability. But it does not alter the course of proceeding if the claim of limited liability is set up by the owner. If, in those proceedings, it should appear that the disaster did happen with his privity or knowledge, or, perhaps, if it should appear that the requirements of the steamboat inspection law were not complied with by him, he would not obtain a decree for limited liability; that is all. We say "perhaps," for it has never yet been decided, at least by this court, that the owner cannot claim the benefit of limited liability when a disaster happens to a coast-wise steamer without his fault, privity, or knowledge, even though some of the requirements of the steamboat inspection law may not have been complied with. The act of Congress, passed June 26, 1884, entitled "An act to remove certain burdens on the American merchant marine," etc., 23 Stat. 53, c. 121, has a section (§ 18) which seems to have

been intended as explanatory of the intent of Congress in this class of legislation. It declares that the individual liability of a ship-owner shall be limited to the proportion of any or all debts and liabilities that his individual share of the vessel bears to the whole; and the aggregate liabilities of all the owners of a vessel on account of the same shall not exceed the value of such vessel and freight pending. The language is somewhat vague, it is true; but it is possible that it was intended to remove all doubts of the application of the limited liability law to all cases of loss and injury caused without the privity or knowledge of the owner. But it is unnecessary to decide this point in the present case. The pendency of the proceedings in the limited liability cause was a sufficient answer to the libel of the appellants.

The question then arises whether the defence made by the appellants in the cause of limited liability instituted by the owners of the steamship is a good defence as set forth in the pleadings and the agreed statement of facts. The main allegation relied on by the appellants to bring the case within the steamboat inspection law is, that the second mate was in charge of the vessel at the time of the accident, and that he was not a licensed pilot. The libellant owners deny this, and claim that it is immaterial if true. There is no proof on the subject. But suppose it were admitted to be true, how could the owners have prevented the second mate from being in charge? By virtue of his office and the rules of maritime law, the captain or master has charge of the ship and of the selection and employment of the crew, and it was his duty, and not that of the owners, to see that a competent and duly qualified officer was in actual charge of the steamer when not on the high seas. It is not alleged that the captain himself and the first mate were not regularly licensed pilots. They usually are such on all sea-going steamers; and in the absence of any allegation to the contrary, it will be presumed that they were so licensed.

The other allegations, "that there was not proper apparatus on the vessel for launching the boats," and "that the ship was not properly constructed in respect to her bulkheads and other

wise," are too vague and indefinite to form the basis of a judgment. Besides, these allegations are denied, and no proof was offered on the subject.

The several allegations that the disaster was owing to the unfitness, gross negligence, or carelessness of the servants or agents of the steamship company, who were engaged in navigating the ship at the time of the disaster, which allegations were made for the purpose of showing that the case came within the Massachusetts statute were also denied, and not sustained by any proof. The bearing and effect of that law, however, are proper to be more fully considered.

We have decided in the case of *The Harrisburg*, 119 U. S. 199, that no damages can be recovered by a suit in admiralty for the death of a human being on the high seas or on waters navigable from the seas, caused by negligence, in the absence of an act of Congress, or a statute of a State, giving a right of action therefor. The maritime law, of this country at least, gives no such right. We have thus far assumed that such damages may be recovered under the statute of Massachusetts in a case arising in the place where the stranding of the City of Columbus took place, within a few rods of the shore of one of the counties of that commonwealth; and have also assumed that the law of limited liability is applicable to that place. Of the latter proposition we entertain no doubt. The law of limited liability, as we have frequently had occasion to assert, was enacted by Congress as a part of the maritime law of this country, and therefore it is co-extensive, in its operation, with the whole territorial domain of that law. *Norwich Co.* v. *Wright*, 13 Wall. 104, 127; *The Lottawana*, 21 Wall. 558, 577; *The Scotland*, 105 U. S. 24, 29, 31; *Providence & New York Steamship Co.* v. *Hill Man'f'g Co.*, 109 U. S. 578, 593. In *The Lottawana* we said: "It cannot be supposed that the framers of the Constitution contemplated that the law should forever remain unalterable. Congress undoubtedly has authority under the commercial power, if no other, to introduce such changes as are likely to be needed." (p. 577.) Again, on page 575, speaking of the maritime jurisdiction referred to in the Constitution, and the system of law to be administered

thereby, it was said : " The Constitution must have referred to
a system of law coëxtensive with, and operating uniformly in,
the whole country. It certainly could. not have been the in-
tention to place the rules and limits of maritime law under the
disposal and regulation of the several States, as that would
have defeated the uniformity and consistency at which the
Constitution aimed on all subjects of a commercial character
affecting the intercourse of the States with each other or with
foreign States." In *The Scotland* this language was used : " But
it is enough to say, that the rule of limited responsibility is
now our maritime rule. It is the rule by which, through the
act of Congress, we have announced that we propose to ad-
minister justice in maritime cases." (p. 31.) Again, in the
same case, p. 29, we said : "But, whilst the rule adopted by
Congress is the same as the rule of the general maritime law,
its efficacy as a rule depends upon the statute, and not upon
any inherent force of the maritime law.. As explained in *The
Lottawana*, . . . the maritime law is only so far operative as
law in any country as it is adopted by the laws and usages of
that country ; and this particular rule of the maritime law had
never been adopted in this country until it was enacted by
statute. Therefore, whilst it is now a part of our maritime
law, it is, nevertheless, statute law." And in *Providence &
New York Steamship Co.* v. *Hill Man'f'g Co.*, it was said :
" The rule of limited liability prescribed by the act of 1851 is
nothing more than the old maritime rule, administered in
courts of Admiralty in all countries except England, from
time immemorial; and if this were not so, the subject matter
itself is one that belongs to the department of maritime law."
(p. 593.)

These quotations are believed to express the general, if not
unanimous, views of the members of this court for nearly
twenty years past ; and they leave us in no doubt that, whilst
the general maritime law, with slight modifications, is accepted
as law in this country, it is subject to such amendments as
Congress may see fit to adopt. One of the modifications of
the maritime law, as received here, was a rejection of the law
of limited liability. We have rectified that. Congress has

restored that article to our maritime code. We cannot doubt its power to do this. As the Constitution extends the judicial power of the United States to "all cases of admiralty and maritime jurisdiction," and as this jurisdiction is held to be exclusive, the power of legislation on the same subject must necessarily be in the national legislature, and not in the state legislatures. It is true, we have held that the boundaries and limits of the admiralty and maritime jurisdiction are matters of judicial cognizance, and cannot be affected or controlled by legislation, whether state or national. Chief Justice Taney, in *The St. Lawrence*, 1 Black, 522, 526, 527; *The Lottawana*, 21 Wall. 558, 575, 576. But within these boundaries and limits the law itself is that which has always been received as maritime law in this country, with such amendments and modifications as Congress may from time to time have adopted.

It being clear, then, that the law of limited liability of shipowners is a part of our maritime code, the extent of its territorial operation (as before intimated) cannot be doubtful. It is necessarily coëxtensive with that of the general admiralty and maritime jurisdiction, and that by the settled law of this country extends wherever public navigation extends — on the sea and the great inland lakes, and the navigable waters connecting therewith. *Waring* v. *Clarke*, 5 How. 441; *The Genesee Chief* v. *Fitzhugh*, 12 How. 443; *Jackson* v. *The Magnolia*, 20 How. 296; *Commercial Transportation Co.* v. *Fitzhugh*, 1 Black, 574.

The present case, therefore, is clearly within the admiralty and maritime jurisdiction. The stranding of the City of Columbus took place on Devil's Bridge, on the north side of and near Gay Head, at the west end of Martha's Vineyard, just where Vineyard Sound opens into the main sea. Though within a few rods of the island (which is a county of Massachusetts) and within the jaws of the headland, it was on the navigable waters of the United States, and no state legislation can prevent the full operation of the maritime law on those waters.

It is unnecessary to consider the force and effect of the statute of Massachusetts over the place in question. Whatever

force it may have in creating liabilities for acts done there, it cannot neutralize or affect the admiralty or maritime jurisdiction or the operation of the maritime law in maritime cases. Those are matters of national interest. If the territory of the state technically extends a marine league beyond the seashore, that circumstance cannot circumscribe or abridge the law of the sea. Not only is that law the common right of the people of the United States, but the national legislature has regulated the subject, in greater or less degree, by the passage of the navigation laws, the steamboat inspection laws, the limited liability act, and other laws. We have no hesitation, therefore, in saying that the limited liability act applies to the present case, notwithstanding the disaster happened within the technical limits of a county of Massachusetts, and notwithstanding the liability itself may have arisen from a state law. It might be a much more serious question, whether a state law can have force to create a liability in a maritime case at all, within the dominion of the admiralty and maritime jurisdiction, where neither the general maritime law nor an act of Congress has created such a liability. On this subject we prefer not to express an opinion.

The question relating to the insurance money received for the loss of the ship and freight has already been settled by our decision in the case of *The City of Norwich*, 118 U. S. 468, and requires no further discussion here. This case is governed by that, so far as the claim to the insurance money is concerned.

*The decrees in both cases are affirmed.*