## THE ADELINE.

### (District Court, N. D. Florida. July 8, 1918.)

1. JUDICIAL SALES ⊂⊃50(1)—PERISHABLE PROPERTY—TITLE.

Sale of property as perishable under order of court, pursuant to statutes authorizing such sales to avoid deterioration and accumulation of costs, will confer a good title in the purchaser, without regard to the title or interest of the defendant, or the extent of liens fastened thereon by the common or statutory law.

2. MARITIME LIENS ⊂⊃48—PERISHABLE PROPERTY—SALES BY ORDER OF STATE COURT.

The sale of a boat subject to admiralty jurisdiction under process of a state court, under statutory provisions, as perishable property, does not extinguish a maritime lien for supplies advanced prior to the proceedings and sale, especially in view of Const. U. S. art. 3, § 2, relating to admiralty jurisdiction.

In Admiralty. Libel by A. M. Hyer, trading as the Hyer Launch Company, against the gasoline launch Adeline, for supplies and materials furnished. Exceptions to answer sustained.

John P. Stokes, of Pensacola, Fla., for libelant.
Watson & Pasco, of Pensacola, Fla., for respondent.

SHEPPARD, District Judge. This case involves the question of whether or not the sale of a boat, the subject of admiralty jurisdiction, under a state statute, as perishable property, would extinguish a maritime lien for supplies. The Hyer Launch Company libeled the launch Adeline for supplies furnished the launch, which was employed in the usual commerce of such craft in the harbor of Pensacola. Before admiralty process was run against the launch, it was seized under an attachment issued out of the justice of the peace court of Escambia county, Fla., at the suit of James Johnson against the Pensacola Fertilizer & Oil Company, as the property of the latter. In the proceedings in the state court an order for the sale of said launch as perishable property and liable to deterioration was obtained, and the boat was sold in conformity to the statute of Florida in such case provided. The sale was had in due course, and the claimant took possession under a bill of sale, pursuant to the purchase at public sale according to law. In addition to the facts here summarized, the answer alleged that the lien of libelant, if any, existing prior to the sale of the launch as perishable property, was by such sale forever released and discharged.

[1] It is alleged, and not denied, that the libelant had knowledge of the proceedings and sale under the process of the state court, but deferred taking any action until the launch was delivered to the possession of the purchaser, when the libelant caused the admiralty process out of the United States District Court to issue against the Adeline for materials and supplies. Consequently there is submitted by this record the question: Does the sale of a boat subject to the ad-

miraity jurisdiction, under process of a state court under statutory provisions, as perishable property, extinguish a maritime lien for supplies advanced prior to the proceedings and sale under order of the state court? That a sale of property as perishable under order of court, pursuant to statutes authorizing such sale to avoid deterioration and accumulation of costs, will confer a good title in the purchaser, without regard to the title or interest of the defendant, or extent of claims or liens fastened thereon by common or statutory law, is very well settled. Young v. Kellar, 94 Mo. 581, 7 S. W. 295, 4 Am. St. Rep. 405; Meyer v. Sligh, 81 Tex. 336, 16 S. W. 1022; Partin & Orendorff v. Howard, 16 S. W. 861; Jones v. Springer, 15 N. M. 98, 103 Pac. 265.

[2] The case of Taylor v. Carryl, 20 How. 583, 15 L. Ed. 1028, wherein the Supreme Court reviewed the same case from the Supreme Court of the state of Pennsylvania, which inferentially approved the doctrine of the state court that admiralty liens might be discharged from the ship and transferred to the proceeds, is urged by claimant as authority that the maritime lien reattaches to the proceeds, or whatever is substituted for it, and it also is argued, by analogy to the rule which allows the master, in case of necessity, to sell his ship in a foreign port, and pass good title to the purchaser, that, when a court of competent jurisdiction adjudicates the sale of a boat as perishable property, such sale divests the maritime lien against the thing itself, and substitutes the proceeds therefor. The real question, however, decided, and the law upheld by the decision, in Taylor v. Carryl, is the well-established rule of comity, that the court first acquiring jurisdiction has the right to maintain it against any other jurisdiction until the first jurisdiction is exhausted or voluntarily released. Anything more is expressly disclaimed by the court in that case, in the conclusion of the opinion, where it is said:

"The view we have taken of this cause renders it unnecessary for us to consider any question relative to the respective liens of the attaching creditors, and of the seamen for wages, or as to the effect of the sale of the property as chargeable or as perishable upon them."

In the dissenting opinion by Chief Justice Taney in the same case, supra (20 How. text 585, 15 L. Ed. 1028), is announced the correct doctrine as to the exclusive jurisdiction of the admiralty in the enforcement of maritime liens. Said the Chief Justice:

"The Constitution and laws of the United States confer the entire admiralty and maritime jurisdiction expressly upon the courts of the general government; and admiralty and maritime liens are therefore outside the line which marks the authority of a common-law court of a state, and excluded from its jurisdiction. And if a common-law court sells the vessel to which the lien has attached, upon condemnation, to pay the debt, or on account of its perishable condition, it must sell subject to the maritime liens, and they will adhere to the vessel in the hands of the purchaser, and of those claiming under him."

This view has since been adopted and consistently followed by the federal courts, notably in The Lottawanna, 21 Wall. 558, 22 L. Ed.

654; The Elexea (D. C.) 53 Fed. 364; The Chapman (D. C.) 62 Fed. 939. Moreover, section 2 of article 3 of the Constitution extends the judicial power of the United States to all cases of admiralty and maritime jurisdiction. It has been repeatedly held that, in the absence of any legislation on the subject by Congress, the general maritime law as recognized by the federal courts constitutes a part of the national law, applicable to matters within the admiralty and maritime jurisdiction. The Lottawanna, supra; Butler v. Boston S. S. Co., 130 U. S. 552, 9 Sup. Ct. 612, 32 L. Ed. 1017; Workman v. New York, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314.

In the recent case of Southern Pacific Company v. Marie Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, where was brought under review the applicability of the Employés' Compensation Act of New York for injuries sustained while loading a ship in the harbor of New York, the court, after conceding that the maritime law may be changed or affected to some extent by state legislation, citing, for example, a lien by state statute upon a vessel for repairs in her home port, imposing pilotage fees, the right to recover in cases of death, concludes:

"Equally well established is the rule that state statutes may not contravene an applicable act of Congress, or affect the general maritime law beyond certain limits. * * * And plainly, we think, no such legislation is valid, if it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations."

Const. art. 3, invests the federal District Courts with exclusive cognizance of all civil cases of admiralty and maritime jurisdiction, "saving to suitors in all cases, the right of the common-law remedy when the common law is competent to give it." The remedy by sale of boat property given by state statute on the theory of necessity is inapplicable, and cannot be said to be an appropriate common-law remedy, to say nothing of its invasion of the admiralty jurisdiction of the federal courts, which demonstrates its repugnancy to the Constitution.

It follows that the exceptions to the answer must be sustained.