In the Matter of the Complaint of **THREE BUOYS HOUSEBOAT VACATIONS U.S.A., LTD., etc., Appellant,**

v.

**Harvey G. MORTS, et al., Appellees.**

No. 88–2436.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1989.

Decided July 5, 1989.

Joseph A. Murphy, St. Louis, Mo., for appellant.

John C. Torjesen, St. Louis, Mo., for appellees.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Three Buoys Houseboat Vacations U.S.A., Ltd. [hereinafter Three Buoys] appeals an order of the district court[1] which dismissed its Complaint for Exoneration from or Limitation of Liability filed under the Limitation of Liability Act, 46 U.S.C. App. §§ 181 *et seq.* (Supp. I 1983). A service vessel owned by Three Buoys was involved in a collision with a houseboat on the Lake of the Ozarks, in the state of Missouri. Three Buoys filed its complaint in the district court seeking the protection provided under the Limitation of Liability Act. The district court rejected Three Buoys' assertion of admiralty jurisdiction as a basis for subject matter jurisdiction. The district court, however, concluded that it had subject matter jurisdiction under its general federal question jurisdiction. On the merits, the district court determined that the Limitation of Liability Act only applies to vessels which are used on "navigable" waterways as that term is defined for purposes of admiralty jurisdiction. The court also concluded that the Lake of the Ozarks was not navigable for this purpose. Accordingly, the district court dismissed Three Buoys' complaint for failure to state a claim. We affirm the decision of the district court.

## I. BACKGROUND

On August 2, 1987, a service vessel owned by Three Buoys collided with a houseboat on the Lake of the Ozarks.[2] The Lake of the Ozarks is a large reservoir which was created when the Army Corps of Engineers constructed the Bagnell Dam impounding the Osage River. The Bagnell Dam has no locks which allow the passage of vessels. The lake created by the dam is now a popular recreational area for many Missourians and tourists. The lake is located entirely within Missouri.

The collision occurred at approximately 2:00 a.m. and resulted in the deaths of two passengers on the houseboat. Three other passengers on the houseboat and a Three Buoys employee on its service vessel sustained personal injuries. Several claims for wrongful death, personal injury, and property damage have been filed against Three Buoys and its vessel in the Missouri state courts.

Three Buoys filed its complaint in the district court seeking the protections provided under the Limitation of Liability Act, 46 U.S.C. App. §§ 181 *et seq.* Three Buoys maintains that the district court had sub-

**1.** The Honorable John F. Nangle, Chief United States District Judge for the Eastern District of Missouri. The district court's opinion is published at 689 F.Supp. 958 (E.D.Mo.1988).

**2.** Three Buoys is engaged in the business of chartering houseboats on the Lake of the Ozarks. The service vessel involved in the collision was sent out to service a houseboat chartered by Three Buoys. The other vessel involved in the collision was a houseboat, although not Three Buoys' houseboat.

ject matter jurisdiction pursuant to three federal statutes. The first, 28 U.S.C. § 1333, gives district courts subject matter jurisdiction to hear admiralty cases. The two remaining statutes, 28 U.S.C. §§ 1331, 1337, give the district courts subject matter jurisdiction to hear cases involving federal questions and cases arising under an act of Congress regulating commerce, respectively.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

We begin our analysis by determining the basis for the district court's, and hence this court's, subject matter jurisdiction. As already noted, Three Buoys maintains that subject matter jurisdiction is proper pursuant to three statutes, 28 U.S.C. §§ 1333, 1331, and 1337. We will review each of these statutes to determine whether they provide a basis for subject matter jurisdiction.

■ Subject matter jurisdiction over admiralty cases is conferred by 28 U.S.C. § 1333 which provides in pertinent part:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

28 U.S.C. § 1333 (1982).

In the early admiralty cases the extent of admiralty jurisdiction over maritime torts was determined exclusively through a locality test, *i.e.*, whether the tort occurred on navigable waters. In 1972, however, the Supreme Court added a nexus requirement for purposes of determining admiralty jurisdiction. In *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972), the Supreme Court held that in order to come within the court's admiralty jurisdiction a tort must "bear a significant relationship to traditional maritime activity." We need not reach the nexus requirement in the present case because we conclude that the collision on the Lake of the Ozarks at issue

in this appeal fails the locality requirement of admiralty jurisdiction.

As already noted, it is well settled that admiralty jurisdiction only extends to torts which occur on "navigable" waters. *Id.* at 253, 93 S.Ct. at 497. Therefore, we must determine whether the Lake of the Ozarks is navigable as that term is used in the context of admiralty jurisdiction.

In *Kaiser Aetna v. United States*, 444 U.S. 164, 171–72, 100 S.Ct. 383, 388–89, 62 L.Ed.2d 332 (1979), the Supreme Court noted some of the conflicting definitions that are often applied by the lower courts in determining whether a waterway is navigable. The confusion was attributed primarily to the four distinct purposes underlying the term "navigability" as set forth in *Livingston v. United States*, 627 F.2d 165, 169 (8th Cir.1980), *cert. denied*, 450 U.S. 914, 101 S.Ct. 1354, 67 L.Ed.2d 338 (1981) which are:

> to delimit the boundaries of the navigational servitude; to define the scope of Congress' regulatory authority under the commerce clause; to determine the extent of the authority of the Corps of Engineers under the Rivers and Harbors Act of 1899; and to establish the limits of federal admiralty jurisdiction. Each of these areas of the law might well require a different definition of 'navigability.'

Three Buoys argues for an expansive definition of navigable which, of course, would include the Lake of the Ozarks within its definition. In *Loc–Wood Boat & Motors v. Rockwell*, 245 F.2d 306, 307 (8th Cir.1957), a case with facts somewhat similar to the instant case, this court stated: "The Lake of the Ozarks was created by the Bagnell Dam in the Osage River. The lake is entirely within the state of Missouri, but is navigable water within the admiralty and maritime jurisdiction of the United States." *See also George v. Beavark, Inc.*, 402 F.2d 977, 978 (8th Cir.1968) ("If the river was navigable prior to construction of the dam, it continues to be considered as a navigability stream."). Three Buoys argues that because the Osage River was historically a navigable waterway prior to

the construction of the Bagnell Dam, it retains its navigable waterway status notwithstanding the construction of the dam which prevents interstate travel on the Osage.

While *Loc–Wood Boat & Motors* and *George v. Beavark, Inc.* seem to provide strong support for Three Buoys' contentions, those cases were later disapproved in *Livingston v. United States.* In *Livingston,* this court suggested that navigability is not a static concept and once a waterway is found to be navigable this does not preclude a subsequent finding of nonnavigability due to a change in circumstances.

> The history of commercial traffic on the river, whatever its intrinsic interest, does not determine the scope of present-day admiralty jurisdiction. *Notwithstanding any expressions to the contrary in prior decisions of this court, federal admiralty jurisdiction turns on contemporary navigability in fact.*

*Livingston v. United States,* 627 F.2d at 170 (emphasis added).

In *Livingston* this court indicated that the closing of waters to commercial shipping should have the effect of eliminating admiralty jurisdiction over them. *Id.* at 169. Accordingly, this court held the "concept of 'navigability' in admiralty is properly limited to describing a present capability of waters to sustain commercial shipping." *Id.* at 169–70. When this definition of navigability is applied to the facts before us it is clear that the Lake of the Ozarks, as found by the district judge, is not a navigable waterway for purposes of admiralty jurisdiction.

Because of its large size the Lake of the Ozarks is capable of sustaining commercial shipping. Nevertheless, in order to qualify as a navigable waterway for admiralty purposes we hold that purely intrastate commercial shipping is not enough. Navigability for this purpose requires interstate or foreign commercial shipping. The federal admiralty jurisdiction is founded upon the need for a uniform body of governing law with respect to navigation and commercial maritime activity. Applying uniform rules in admiralty prevents those engaged in interstate and foreign shipping from being subjected to conflicting rules of law. Such a concern is not present in the context of purely intrastate commercial shipping because only one body of law will necessarily apply and shippers will not be subjected to conflicting legal rules. Therefore we hold that the Lake of the Ozarks is not a navigable waterway and the district court properly declined to exercise its admiralty jurisdiction over this dispute.

■ Our decision is controlled by the *Livingston* case. At oral argument Three Buoys urged this panel to reject the reasoning of the *Livingston* case and apply a different definition of navigability. We, of course, cannot do this. A panel of this court is not at liberty to disregard prior panel decisions even when the panel may disagree with the reasoning of existing decisions. Unless intervening Supreme Court precedent has cast doubt on the reasoning of existing circuit authority, we must apply the body of circuit law that exists when we decide a given case. Only this court sitting *en banc* can disagree with or reject existing circuit authority.

■ The next bases for subject matter jurisdiction asserted by Three Buoys are 28 U.S.C. §§ 1331 and 1337. Both of these statutes require the cause of action over which jurisdiction is asserted to have "arisen under" federal law. The district court concluded that it had subject matter jurisdiction "pursuant to 28 U.S.C. §§ 1331 and 1337, over this limitation proceeding which arises under an Act of Congress regulating commerce." 689 F.Supp. at 963. We disagree with this conclusion.

Our research has not turned up any other case in which subject matter jurisdiction over a Limitation of Liability Act proceeding has been based on either section 1331 or 1337 in the absence of admiralty jurisdiction. The Limitation of Liability Act has been considered by the federal courts for almost one hundred-fifty years, yet no reported decisions have concluded that jurisdiction for such a claim may be premised under either section 1331 or 1337. This in itself is persuasive evidence that there is a flaw in Three Buoys' contentions.

We do not believe that either of these statutes confers jurisdiction on the district court because this case arose under state tort law and cannot be said to have arisen under the Limitation of Liability Act as argued by Three Buoys. In discussing whether a cause of action arises under federal law the Supreme Court recently noted that "[t]here is no 'single, precise definition' of that concept; rather, 'the phrase "arising under" masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.'" *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986) (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983)).

The Court noted, however, that "[t]he 'vast majority' of cases that come within this grant of jurisdiction are covered by Justice Holmes' statement that a '"suit arises under the law that creates the cause of action."'" *Merrell Dow Pharmaceuticals*, 478 U.S. at 808, 106 S.Ct. at 3233 (quoting *Franchise Tax Board*, 463 U.S. at 8–9, 103 S.Ct. at 2846 (quoting *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916))). This test, when applied to the instant facts, further supports our conclusion that this is not a case that arises under federal law. If a suit arises under the law that creates the cause of action then undoubtedly this case would arise under state law because it is state tort law that created the cause of action and defines the rights and obligations of the parties. Because the instant case does not fall within the court's admiralty jurisdiction and it is not a maritime tort it will be resolved according to Missouri state tort law. The fact that this case involves an issue of federal law does not alter our conclusion. There is a "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharmaceuticals*, 478 U.S. at 813, 106 S.Ct. at 3235 (footnote omitted).

Thus, Three Buoys' assertion of limited liability under the Limitation of Liability Act does not make this a case "arising under" federal law.

We recognize that Justice Holmes' test for determining the extent of federal jurisdiction is more useful as a test for inclusion rather than exclusion. Nevertheless, our holding is also consistent with the proper management of the federal judicial system. In *Merrell Dow Pharmaceuticals*, the Court reemphasized that "in exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." 478 U.S. at 810, 106 S.Ct. at 3233.

We also note that the Limitation of Liability Act is more akin to a defense. In this regard the following language taken from the *Merrell Dow Pharmaceuticals* case seems especially apposite: "Under our longstanding interpretation of the current statutory scheme, the question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.' * * * *A defense that raises a federal question is inadequate to confer federal jurisdiction.*" 478 U.S. at 808, 106 S.Ct. at 3232 (quoting *Franchise Tax Board*, 463 U.S. at 9–10, 103 S.Ct. at 2846).

In *Franchise Tax Board* the Supreme Court discussed its earlier decision in *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). The Court noted that "*Skelly Oil* has come to stand for the proposition that 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.'" *Franchise Tax Board*, 463 U.S. at 16, 103 S.Ct. at 2850 (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2767 (2d ed. 1983)). In *Skelly Oil*, the Court concluded that the Declaratory Judgment Act was not a jurisdictional statute and it did not extend the jurisdiction of the federal courts. 339 U.S. at 671–72, 70 S.Ct. at 878–79. The Declaratory Judgment Act was found to be procedural and did not

supply a new basis for subject matter jurisdiction.

In the instant case we are confronted with a similar statute. Two circuits have very recently concluded that the Limitation of Liability Act does not provide an independent source of subject matter jurisdiction. *See Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046 (11th Cir.1989); *In the Matter of Sisson*, 867 F.2d 341, 348–49 (7th Cir.1989). In *Lewis Charters,* the Eleventh Circuit stated the issue before it was whether a claim "incapable of invoking admiralty jurisdiction under section 1333 is, nonetheless, cognizable in the federal court under the Limitation of Liability Act." 871 F.2d at 1052. The Court answered this question in the negative. *Id.* at 1054. While the Limitation of Liability Act provides a defense to shipowners in certain admiralty cases, it never extended the jurisdiction of the federal courts. We conclude that if but for the availability of the Limitation of Liability Act procedure the federal claim would arise only as a defense to a state tort claim, jurisdiction is lacking.

■ Accordingly, we hold that subject matter jurisdiction is not conferred under 28 U.S.C. §§ 1331 or 1337 because Three Buoys' complaint does not "arise under" federal law for purposes of these jurisdictional statutes. Furthermore, whether a complaint under the Limitation of Liability Act "arises under" federal law in the absence of admiralty jurisdiction is primarily a question of mere academic interest. Because, as we discuss later, the Limitation of Liability Act's territorial application is coextensive with the territorial reach of admiralty jurisdiction, the courts will never be faced with a case in which admiralty jurisdiction is lacking yet the Limitation Act will apply. Thus, Three Buoys has nothing to gain by persuading us that this case "arises under" federal law and is thus within our federal question jurisdiction.

### B. Merits

Finally, aside from the fatal jurisdictional defect, Three Buoys would not be entitled to the relief it seeks on the merits. Three Buoys is trying to limit its liability for the collision involving its service vessel and a houseboat on the Lake of the Ozarks.

The Limitation of Liability Act provides in pertinent part: "The liability of the owner of any vessel * * * for any loss, damage, or injury by collision * * * incurred without the privity or knowledge of such owner * * * shall not * * * exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." 46 U.S.C.App. § 183(a) (Supp. I 1983).

If the Act applies to the present case Three Buoys may escape liability for the wrongful deaths, personal injury, and property damage caused by its vessel. Under the Act the owner of a vessel may limit his liability to the value of the vessel and its freight at the conclusion of its voyage. In the present case Three Buoys' vessel is lying at the bottom of the lake and it has no value. Accordingly, if we find the Act to apply the claimants will be deprived of any remedy for Three Buoys' wrongs.[3]

Prior to its amendment, the Limitation of Liability Act did not "apply to the owner or owners of any canal boat, barge, or lighter, or to any vessel of any description whatsoever, used in rivers or inland navigation." Limitation of Liability Act, Ch. 43, § 7, 9 Stat. 635, 636 (1851). Three Buoys argues that because the Limitation of Liability Act was amended in the late 1800's to apply to "all vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters." Amendment to the Limitation of Liability Act, Ch. 421, § 4, 24 Stat. 79, 81 (1886), it must necessarily apply to vessels operating on the Lake of the Ozarks. Three Buoys misconstrues the nature of this amendment. This amendment was not intended to extend the territorial

---

**3.** Several cases have recently espoused a very unfavorable judicial attitude towards the Limitation of Liability Act. The Act is considered by many to be outmoded and the reasons for which the Act was passed have largely been replaced by the use of corporate organization and the availability of insurance. *See, e.g., Esta Later Charters, Inc. v. Ignacio,* 875 F.2d 234 (9th Cir.1989).

reach of the Limitation of Liability Act beyond the reach of admiralty and maritime jurisdiction. The amendment merely extended the Act's protections to all vessels within the court's admiralty jurisdiction, including those that were not being operated in the tidewaters. The amendment did not expand the Act's application to waters which are nonnavigable for purposes of admiralty and maritime jurisdiction.

Thus, prior to its amendment the Limitation of Liability Act and admiralty jurisdiction were not coextensive. Admiralty jurisdiction extended to all navigable waters whereas the Limitation of Liability Act did not extend to rivers, lakes and inland navigation. The amendment of the Act merely extended its reach to the fullest extent of admiralty jurisdiction.

In an early case interpreting the Limitation of Liability Act the Supreme Court had this to say: "The law of limited liability, as we have frequently had occasion to assert, was enacted by Congress as a part of the maritime law of this country, and therefore it is co-extensive, in its operation, with the whole territorial domain of that law." *Butler v. Boston Steamship Co.*, 130 U.S. 527, 555, 9 S.Ct. 612, 618, 32 L.Ed. 1017 (1889) (citations omitted).

It being clear, then, that the law of limited liability of shipowners is a part of our maritime code, the extent of its territorial operation (as before intimated) cannot be doubtful. It is necessarily coextensive with that of the general admiralty and maritime jurisdiction, and that by the settled law of this country extends wherever public navigation extends—on the sea and the great inland lakes, and the navigable waters connecting therewith. *Id.* at 557, 9 S.Ct. at 619 (citations omitted).

Accordingly, courts have consistently limited the application of the Limitation of Liability Act to waters encompassed within the territorial domain of admiralty and maritime law.

In order to be within the reach of admiralty and maritime law, as previously noted, the waters must be navigable. Because the reach of the Limitation of Liability Act

is coextensive with admiralty we will use the same definition for navigable as that which was used for admiralty jurisdiction purposes. Thus, our conclusion that Lake of the Ozarks is not navigable for admiralty jurisdiction purposes compels a conclusion that it is also not navigable for purposes of the Limitation of Liability Act.

In *Sisson*, the Seventh Circuit also interpreted the Limitation of Liability Act's territorial application to be limited to the territorial reach of admiralty jurisdiction. In addition, in the wake of the Supreme Court's recent decisions applying a nexus requirement for admiralty jurisdiction, the Seventh Circuit held that the "Limitation of Liability Act will be cognizable in admiralty only when the underlying tort has a relationship to traditional maritime activity." *In the Matter of Sisson*, 867 F.2d at 351 (footnote omitted). Thus, the Seventh Circuit has interpreted the Limitation of Liability Act to only apply to cases which meet both the locality and nexus tests under admiralty jurisdiction. Nevertheless, because the instant case fails the locality requirement we need not reach the issue decided in *Sisson*, *i.e.*, whether the nexus requirement applies to a Limitation of Liability Act proceeding. We note, however, that if the Limitation of Liability Act application is truly coextensive with admiralty jurisdiction such a nexus requirement would seem to apply.

■ Three Buoys argues that the Limitation of Liability Act is an act of Congress passed pursuant to its powers to regulate interstate commerce. Therefore, Three Buoys maintains, the definition of navigable for purposes of the Limitation of Liability Act should not be the restrictive definition used in the context of admiralty jurisdiction but rather the broad definition of navigable used in the context of the commerce clause.

As already noted, navigable has been defined in several contexts and courts must be fully aware of the purpose for which the concept was invoked in particular cases. In *Livingston*, we recognized the Supreme Court's admonition "that Congress' regulatory authority under the commerce clause is historically very broad, and the expan-

sive definitions of navigability developed in commerce clause cases are not really appropriate in other contexts where the actual capability of a stream to support navigation is critical." *Livingston v. United States*, 627 F.2d at 169 (citing *Kaiser Aetna v. United States*, 444 U.S. at 173, 100 S.Ct. at 389). In *Livingston* this court declined to invoke the broad definition of navigability often used in the commerce clause context. The *Livingston* court emphasized that "a functional analysis of 'navigability'" should be employed "so that the limits of governmental authority are determined in accordance with the purposes it serves." *Livingston v. United States*, 627 F.2d at 169.

Accordingly, we hold that in the instant case the territorial application of the Limitation of Liability Act is limited to waters that are navigable in fact for purposes of admiralty jurisdiction. Because, as we have already discussed, the Lake of the Ozarks is not a navigable waterway for purposes of admiralty jurisdiction Three Buoys would not be entitled to the protections afforded under the Limitation of Liability Act.

## III. CONCLUSION

We affirm the district court's dismissal of Three Buoys' complaint under the Limitation of Liability Act. Although the district court concluded that it had subject matter jurisdiction, we conclude that it did not.

The district court correctly noted that jurisdiction was not proper under its admiralty jurisdiction because the collision at issue did not occur on navigable waters. We believe that in the absence of admiralty jurisdiction the district court lacked subject matter jurisdiction over this case because the Limitation of Liability Act does not provide an independent source of jurisdiction and this case did not "arise under" federal law for purposes of general federal question jurisdiction. The complaint, therefore, should be dismissed for want of jurisdiction and it is so ordered.