SAC AND FOX TRIBE OF THE MIS-
SISSIPPI IN IOWA; Alex Walker, Jr.;
Frank Wanatee, Jr.; Lyle Walker;
Aaron Walker; Calvin Johnson, Sr.;
Vern Jefferson; and Talbert Daven-
port, Sr., Plaintiffs,

v.

Homer BEAR, Jr.; Wayne Pushetone-
qua; Harvey Davenport, Jr.; Ray A.
Young Bear; Frank Black Cloud;
Keith Davenport; Deron Ward; Wells
Fargo Bank Iowa, N.A.; State Bank
of Toledo; Home Federal Savings
Bank, Defendants.

No. C03–28 LRR.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

April 15, 2003.

Dennis Wayne Johnson, Angela Ellen Dralle, Dorsey & Whitney, Des Moines, IA, Mark A Jarboe, Dorsey & Whitney, Minneapolis, MN, for Plaintiffs.

Charles E Gribble, Parrish Kruidenier Moss Dunn, Montgomery Boles & Gribble, LLP, Des Moines, IA, for Defendants.

## MEMORANDUM OPINION AND ORDER

READE, District Judge.

This matter is before the Court pursuant to plaintiffs' Motion for a Temporary Restraining Order [docket no. 2]. The Court held a hearing on April 10, 2003.

### I. FACTS

Plaintiff Sac and Fox Tribe of the Mississippi in Iowa operates, among other things, the Meskwaki Casino near Tama, Iowa. The governing body of the Tribe is the Sac and Fox Tribal Council (the "Tribal Council"). Plaintiffs Alex Walker, Jr., Frank Wanatee, Jr., Lyle Walker, Aaron Walker, Calvin Johnson, Sr., Vern Jefferson and Talbert Davenport, Sr., are the elected Tribal Council of the Sac and Fox Tribe (the "Elected Tribal Council"). Pursuant to the Tribe's Constitution, the members of the Elected Tribal Council were each elected to four-year terms which have not yet expired.

Due to allegedly illegal acts by certain members of the Elected Tribal Council, several tribal members circulated petitions to recall each of the seven members of the Elected Tribal Council. Article XII of the Tribe's Constitution authorizes recall petitions. Under Article XII, if a recall petition is signed by no less than thirty percent of the eligible voters at the last general election, a recall election must be held. Defendants contend that they submitted to the Elected Tribal Council a recall petition with the requisite signatures of thirty percent of the eligible voters of the Tribe. Defendants allege that in spite of this, the Elected Tribal Council refused to conduct a recall election, in violation of the Tribal Constitution and in disregard of the advice of its legal counsel. Plaintiffs contend they did not hold a recall election because they questioned the validity of the petitions. The Bureau of Indian Affairs has refused to involve itself in what it characterizes as an "internal tribal matter." The Court notes that the Tribe's Constitution does not create tribal courts. The Tribe's Constitution grants dispute resolution power to the Tribal Council.

After the Elected Tribal Council refused to hold a recall election, the hereditary chief of the Tribe, in accordance with the traditional governance of the Tribe, appointed Homer Bear, Jr., Wayne Pushetonequa, Harvey Davenport, Jr., Ray A. Young Bear, Frank Black Cloud, Keith Davenport and Deron Ward to the Tribal Council (the "Appointed Tribal Council"). On approximately March 26, 2003, the Appointed Tribal Council seized control of the tribal center and other tribal facilities. The Appointed Tribal Council notified Wells Fargo Bank Iowa, N.A. and the State Bank of Toledo, the banks holding the Tribe's casino revenues, that the Elected Tribal Council was no longer in control of the funds of the Tribe. Wells Fargo Bank, N.A. has frozen the Tribe's accounts. The State Bank of Toledo has continued to process payroll checks for the Meskwaki Casino. Payroll checks were issued to casino employees as regularly scheduled on April 10, 2003 after both sides of this controversy, through counsel, agreed to allow the bank to do so.

On April 8, 2003, plaintiffs filed with this Court a Complaint for Declaratory Judgment and Injunctive Relief [docket no. 1]. In their Complaint, plaintiffs ask that this Court issue a judgment settling this tribal dispute by declaring which Tribal Council is in control of the Tribe and the casino revenues.

## II. LEGAL ANALYSIS

■ Before turning to the substantive issues raised by the parties, the Court must first determine whether there is subject matter jurisdiction in this case. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Plaintiffs bear the burden of establishing the existence of subject matter jurisdiction. *See Osborn v. United States,* 918 F.2d 724, 730 (8th Cir.1990).

■ Diversity jurisdiction is not available here under 28 U.S.C. § 1332 because Indian tribes are neither foreign states, *Cherokee Nation v. State of Georgia,* 30 U.S. (5 Pet.) 1, 16–18, 8 L.Ed. 25 (1831), nor citizens of any state, *Standing Rock Sioux Indian Tribe v. Dorgan,* 505 F.2d 1135, 1140 (8th Cir.1974). Therefore, federal jurisdiction, if any, must arise under the Court's federal question jurisdiction.

Plaintiffs advance three theories in support of their position that this Court has federal question jurisdiction over this action. They claim that federal question jurisdiction exists pursuant to: (1) the United States' general trust responsibilities; (2) the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, *et seq.* ("IGRA"); and (3) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"). In response, defendants argue that this Court does not have subject matter jurisdiction because plaintiffs are asking that the Court interpret the Tribe's

Constitution and because the action is essentially an intra-tribal dispute.

■ Federal question jurisdiction is defined as follows:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1331. A district court may exercise federal question jurisdiction if the court is satisfied that the claim is one " 'arising under' federal law." *National Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 850, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); *Iowa Mgmt. & Consultants, Inc. v. Sac & Fox Tribe of the Mississippi in Iowa,* 207 F.3d 488, 489 (8th Cir.2000).

In *Three Buoys Houseboat Vacations U.S.A., Ltd. v. Morts,* 878 F.2d 1096 (8th Cir.1989), the Eighth Circuit Court of Appeals observed that there is "no 'single, precise definition' " of whether a cause of action "arises under" federal law, but that " 'the phrase "arising under" masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.' " *Id.* at 1100 (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)).

In *Gully v. First Nat'l Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936), the Supreme Court considered whether the action in dispute arose under federal law for purposes of applying 28 U.S.C. §§ 1331 and 1441 (district court's original and removal jurisdiction of actions "arising under" the Constitution, laws, or treaties of the United States). The Court explained:

How and when a case arises "under the Constitution or laws of the United States" has been much considered in the

books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.... The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.... A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto ... and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.... Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.

*Id.* at 112–13, 57 S.Ct. 96. *See also Ultramar Am., Ltd. v. Dwelle,* 900 F.2d 1412, 1414 (9th Cir.1990) (whether a claim is one "arising under" federal law depends on whether federal law is "a necessary element of one of the well-pleaded claims," citing *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

### A. General Trust Responsibility

■ Plaintiffs allege that they are the beneficiaries of the "trust responsibility" imposed on the federal government by federal common law.[1] However, plaintiffs have not alleged a specific cause of action in relation to this "trust responsibility." Rather, in their Complaint, plaintiffs mere-

ly state "[t]he lands of the Meskwaki Settlement are held in trust by the United States for the benefit of the Tribe." In *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (*Mitchell II*), the Supreme Court listed the three elements of a common-law trust: (1) a trustee; (2) a beneficiary; and (3) a trust corpus. Casino revenues do not constitute property held in trust by the federal government, but are instead tribal property. *See Smith v. Babbitt,* 875 F.Supp. 1353, 1369 (D.Minn.1995); *Vizenor v. Babbitt,* 927 F.Supp. 1193, 1203 (D.Minn.1996). Even if plaintiffs had properly plead a claim based on this trust responsibility, the Court finds that there is no trust corpus on which such a claim could be based.

A fiduciary relationship may be created because of the federal government's elaborate regulation of Indian resources, even if there is no express trust relationship. In *Mitchell II,* the Supreme Court found that specific language in statutory and regulatory provisions may directly support the existence of a fiduciary duty, as the provisions of comprehensive regulation of Indian resources creates "a fiduciary and defines the contours of the United States' fiduciary responsibilities." *Id.* at 224, 103 S.Ct. 2961. "[W]here the [f]ederal [g]overnment takes on or has control or supervision over tribal monies or properties, the fiduciary relationship normally exists with respect to such monies or properties (unless Congress has provided otherwise) even though nothing is said expressly in the authorizing or underlying statute (or other fundamental document) about a trust

---

1. In *Heckman v. United States,* 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820 (1912), the Supreme Court explained the source and nature of this trust relationship. In the exercise of its plenary authority over Indian affairs, Congress has the power to place restrictions on the alienation of Indian lands. Where it does

so, it continues guardianship over Indian lands and "[d]uring the continuance of this guardianship, the right and duty of the Nation to enforce by all appropriate means the restrictions designed for the security of the Indians cannot be gainsaid." *Id.,* at 437–438, 32 S.Ct. 424.

fund, or a trust or fiduciary connection." *Id.* (citation omitted).

The Eighth Circuit Court of Appeals has recognized that the federal government's trust responsibility to Indian tribes is a limited one. In *Blue Legs v. U.S. Bureau of Indian Affairs,* 867 F.2d 1094 (8th Cir. 1989), the court noted that "[t]he existence of a trust duty between the United States and an Indian or Indian tribe can be inferred from the provisions of a statute, treaty or other agreement, 'reinforced by the undisputed existence of a general trust relationship between the United States and the Indian people.' " *Id.* at 1100 (quoting *Mitchell II* ). Here, plaintiffs present only the "reinforcement" argument and not the necessary underlying "statute, treaty or other agreement." Plaintiffs have pointed to no substantive law which imposes upon the federal government, as a fiduciary to the tribe, the duty to determine which tribal council is rightfully in control. Indeed, such a determination would be inconsistent with the federal government's commitment to tribal self-determination. The Supreme Court recognizes the federal government's long-standing policy of encouraging tribal self-government. *See, e.g., Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 14–15, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) (tribal courts play vital role in tribal self-government and federal government has consistently encouraged their development); *Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 138 n. 5, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) (through laws governing Indian tribes, Congress has expressed purpose of "fostering tribal self-government"). Civil jurisdiction over tribal-related activities presumptively lies in tribal courts unless a specific treaty provision or federal statute affirmatively limits the jurisdiction. *See Iowa Mutual,* 480 U.S. at 18, 107 S.Ct. 971; *Duncan Energy v. Three Affiliated Tribes,* 27 F.3d 1294, 1299 (8th Cir.1994) (finding that the deference federal courts afford tribal courts concerning tribal-related activities is rooted in Supreme Court precedent).

■ The Court therefore holds that the general trust responsibility of the United States government toward Indian tribes does not form the foundation of subject matter jurisdiction in this intra-tribal dispute.

### *B.  Indian Gaming Rights Act*

■ Plaintiffs' next asserted basis for federal question jurisdiction in this case is the Indian Gaming Regulatory Act ("IGRA"). IGRA requires that the Tribe regulate its gaming operation, *see* 25 U.S.C. § 2710, however, IGRA does not provide a general private right of action. *See Hein v. Capitan Grande Band of Diegueno Mission Indians,* 201 F.3d 1256, 1260 (9th Cir.2000); *Tamiami Partners v. Miccosukee Tribe of Indians of Florida,* 63 F.3d 1030, 1049 (11th Cir.1995); *Tenney v. Iowa Tribe of Kansas,* 243 F.Supp.2d 1196, 1199 (D.Kan.2003); *Hartman v. Kickapoo Tribe Gaming Commission,* 176 F.Supp.2d 1168, 1175 (D.Kan.2001).

In *Smith v. Babbitt,* 100 F.3d 556, 559 (8th Cir.1996), the Eighth Circuit Court of Appeals examined the issue of federal question jurisdiction under IGRA. In *Smith,* the plaintiffs actually pled a cause of action under IGRA, which plaintiffs have not done here. The court determined that although plaintiffs alleged violations of IGRA, plaintiffs' allegations were merely an attempt to force the court to resolve the underlying tribal membership dispute. *Id.* The court refused to involve itself in this intra-tribal dispute, but rather deferred to the decisions of the Indian tribe regarding tribe membership. *Id.*

■ In the instant case, plaintiffs have not pled a cause of action under IGRA. Instead, plaintiffs assert that because the

Tribal Council has been charged with ensuring compliance with IGRA, a ruling by this Court is necessary to allow continued compliance with IGRA. Plaintiffs assert that they are rightfully in control under the Constitution of the Tribe. Defendants claim, conversely, they are lawfully in control of the Tribe because the Elected Tribal Council is in continued violation of the Tribe's Constitution by failing to hold the recall election as requested by thirty percent of the tribal members eligible to vote. As a result of the Elected Tribal Council's refusal to hold a recall election, the hereditary chief, in accordance with traditional tribe governance, appointed a new Tribal Council. The relief requested here is not to enforce or to determine compliance with IGRA, but rather to decide which Tribal Council is properly in place under the Tribe's Constitution. The Court does not find that IGRA provides an appropriate basis for federal question jurisdiction because, despite plaintiffs' efforts to characterize this action as one based on federal question jurisdiction, the Court finds that the Tribe's leadership dispute raises intratribal issues. This Court is without jurisdiction to resolve intra-tribal disputes. *See Goodface v. Grassrope,* 708 F.2d 335, 339 (8th Cir.1983) (holding that where tribe has a "functioning tribal court, which the parties recognize as a court of competent jurisdiction to resolve tribal election disputes ... [it] is essential that the parties seek a tribal remedy ... [because] substantial doubt exists that federal courts can intervene under any circumstances to determine the rights of the contestants in a tribal election dispute."); *Runs After v. United States,* 766 F.2d 347, 352 (8th Cir. 1985) (affirming district court's holding that "resolution of ... disputes involving questions of interpretation of the tribal constitution and tribal law is not within the jurisdiction of the district court"); *Smith v. Babbitt,* 100 F.3d 556, 559 (8th Cir.1996) (holding that federal courts do not have jurisdiction over intra-tribal disputes); *Ordinance 59 Ass'n v. Babbitt,* 970 F.Supp. 914, 927 (D.Wyo.1997) ("unless expressly waived or affected by Congressional enactment, [Indian tribes] have sovereign immunity over intra-tribal disputes such as those involving tribal government and membership").

## C. Racketeer Influenced and Corrupt Organizations Act

Finally, plaintiffs assert that this Court has subject matter jurisdiction under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). Specifically, plaintiffs allege that this Court has jurisdiction under section 1964(a) of RICO[2] to prevent and restrain violations of section 1962 of the statute. Plaintiffs contend that the actions of the Appointed Tribal Council in this case violate section 1962(c), which provides that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such en-

**2.** 18 U.S.C. section 1964(a), "Civil remedies," provides: "The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate of foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons."

terprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

■ To state a claim under section 1962(c), then, plaintiffs must establish (1) the existence of an enterprise; (2) defendant's association with the enterprise; (3) defendant's participation in the predicate acts of racketeering as defined in the statute; and (4) defendants actions constitute a pattern of racketeering activity. *United HealthCare Corp. v. American Trade Ins. Co.*, 88 F.3d 563, 570 (8th Cir.1996). Plaintiffs allege that defendants have engaged in the following predicate acts of racketeering as defined in the statute: (1) carrying weapons in violation of Iowa Code section 724.4; (2) engaging in illegal gambling in violation of Iowa Code section 725.7; (3) engaging in an illegal gambling business in violation of 18 U.S.C. § 1955; (4) laundering of monetary instruments in violation of 18 U.S.C. § 1956; and (5) engaging in monetary transactions in property derived from specified unlawful activities in violation of 18 U.S.C. § 1957. With the exception of the two predicate acts based on state law, which the Court finds inapplicable in this case,[3] each of the predicate acts alleged above requires a finding that defendants' acts in taking control of the Tribal Council are unlawful. If the Appointed Tribal Council is properly in place, their actions would not constitute predicate offenses. Therefore, in order to rule on plaintiffs' RICO claims, this Court would have to first determine whether defendants are unlawfully in control of the Tribe. As previously discussed, this Court does not have jurisdiction to determine which Tribal Council is properly in place under the Tribal Constitution. This is intra-tribal dispute over which this Court has no subject matter jurisdiction.

### III. CONCLUSION

In light of the Court's finding that plaintiffs have failed to carry their burden of establishing the Court's subject matter jurisdiction over this case, IT IS ORDERED as follows:

1. Plaintiffs' Motion for Temporary Restraining Order [docket no. 2] is DENIED.

2. Plaintiffs' Complaint is DISMISSED.

3. All other pending motions are DENIED as moot.

---

**3.** RICO section 1961(1)(A) defines "racketeering activity" to include "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment of more than one year...." Plaintiffs assert that defendants' actions in violation of Iowa Code sections 724.4 and 725.7 constitute "acts or threats involving ... gambling ... which is chargeable under state law and punishable by imprisonment of more than one year...." Iowa Code section 724.4 entitled "Carrying Weapons" makes it unlawful to for a person to go armed with certain types of dangerous, concealed weapons. Iowa Code Section 725.7 entitled "Gaming and Betting—penalty" makes it illegal to engage in certain types of gaming and betting transactions, none of which is at issue here. The Court finds that neither of these state law offenses can be said to apply to defendants' actions in this case.