SAC & FOX TRIBE OF THE MISSISSIPPI IN IOWA ELECTION BOARD, Plaintiff,

v.

BUREAU OF INDIAN AFFAIRS, Midwest Regional Director and Office of the Assistant Secretary–Indian Affairs, Aurene M. Martin, First Assistant and Principal Advisor, Defendants.

No. C 04–1–LRR.

United States District Court, N.D. Iowa, Cedar Rapids Division.

March 2, 2005.

See also 321 F.Supp.2d 1055.

Fred L. Dorr, Wasker, Dorr, Wimmer & Marcouiller, PC, West Des Moines, IA, Michael M. Mason, Portland, OR, Steven F. Olson, Bluedog Olson & Small, PLLP, Minneapolis, MN, Wilford H. Stone, Lynch, Dallas, PC, Cedar Rapids, IA, for Plaintiff.

Robert M. Butler, US Attorney's Office, Cedar Rapids, IA, for Defendants.

### ORDER

READE, District Judge.

The matter before the court is a Motion to Dismiss (docket no. 38).

### I. FACTUAL BACKGROUND

The Sac and Fox Tribe of the Mississippi in Iowa (the "Tribe") is a federally-recognized Indian Tribe with a Constitution dating from 1937. The Tribe's Meskwaki settlement is located in Tama County, Iowa. The Tribe operates the Meskwaki Casino●Bingo●Hotel (the "casino") under a state-tribal compact with the State of Iowa as authorized by the Indian Gaming Regulatory Act ("IGRA"). 25 U.S.C. § 2710(d)(1). Pursuant to the Tribal Constitution, the Tribe is to be governed by an elected Tribal Council (the "Elected Council"). At the time the relevant events underlying this action began, Alex Walker, Jr., Frank Wanatee, Jr., Lyle Walker, Aaron Walker, Calvin Johnson, Sr., Vern Jefferson and Talbert Davenport, Sr., comprised the Elected Council (the "Walker Elected Council").

The Sac and Fox Tribe of the Mississippi in Iowa Election Board (the "Election Board") is charged with conducting and supervising Tribal elections and making and posting necessary regulations for election procedures. At the time the events began, the Election Board was comprised of the following individuals: Leo Dean Peters, Liz Roberts, Barbara Johnson, Preston Duncan, Dolores Troxell, Oona Young Bear, Joyce Wolf, and Priscilla Wanatee (the "Peters Election Board").

In the fall of 2002, members of the Tribe who were dissatisfied with the conduct of the Walker Elected Council alleged illegal conduct by the Walker Elected Council and circulated petitions to seek a special election to recall the entire council. Article XII of the Tribe's Constitution authorizes recall petitions. Under Article XII, if a recall petition is signed by no less than thirty percent of the eligible voters at the last general election, a recall election must be held. Several tribal members submitted to the Walker Elected Council a recall petition with the requisite signatures of thirty percent of the eligible voters of the Tribe.[1] Those members alleged that in spite of submitting a proper recall petition, the Walker Elected Council refused to conduct a recall election, in violation of the

---

1. The members seeking a recall election needed 243 signatures and collected 283.

Tribal Constitution and in disregard of the advice of its legal counsel. The Walker Elected Council contended it did not hold a recall election because it questioned the validity of the petitions. The Walker Elected Council claimed some of the signatures were forged. The Walker Elected Council did not claim to have conducted an investigation to determine if there were 243 valid signatures; neither did the Walker Elected Council provide any further explanation of the alleged irregularities. Rather, the Walker Elected Council stated only that it was satisfied that the irregularities were sufficient to warrant not holding a recall election.

The Tribe's Constitution grants dispute resolution power to the Elected Council. At that time, the Tribe did not have a tribal court. Therefore, there was no separate tribal court or other body to which the frustrated tribal members could appeal the Walker Elected Council's action. On March 3, 2003, after the Walker Elected Council refused to hold a recall election, the hereditary chief of the Tribe, Charlie Old Bear, appointed Homer Bear, Jr., Wayne Pushetonequa, Harvey Davenport, Jr., Ray A. Young Bear, Frank Black Cloud, Keith Davenport and Deron Ward to the Tribal Council (the "Appointed Council"). Old Bear's actions were in accordance with the traditional governance of the Tribe but were not provided for under the terms of the Tribe's Constitution. The Appointed Council claimed authority to govern the Tribe based on the traditional form of Tribal government which predated the 1937 Tribal Constitution.

The Appointed Council, whose members previously had led the recall petition effort, did not seek assistance from the Bureau of Indian Affairs ("BIA") in securing a recall election before pursuing their self-help remedy of claiming Tribal governance. In a letter dated March 13, 2003, however, the Appointed Council did seek BIA recognition as the new government of the Tribe. In response, the BIA refused to involve itself in what it characterized as an "internal tribal matter."

On about March 26, 2003, the Appointed Council seized control of the Tribal Center and other Tribal facilities. The Walker Elected Council alleged that the Appointed Council seized the casino by force and placed armed guards in various Tribal buildings. During this time, the casino remained open and continued to operate under the Appointed Council's control. The Walker Elected Council alleged that the Appointed Council excluded members of the Walker Elected Council from the casino and other Tribal facilities but permitted members of the Walker Elected Council, like all members of the Tribe, to receive their monthly dividend checks. The Appointed Council notified Wells Fargo Bank Iowa, N.A. ("Wells Fargo") and the State Bank of Toledo, the banks holding the Tribe's casino revenues, that the Walker Elected Council was no longer in control of the funds of the Tribe. Wells Fargo froze the Tribe's accounts. The State Bank of Toledo continued to process payroll checks for the casino. Payroll checks were issued to casino employees as regularly scheduled on April 10, 2003, after the Elected and Appointed Councils, through counsel, agreed to allow the State Bank of Toledo to do so.

On April 8, 2003, the Walker Elected Council filed with this court a Complaint for Declaratory Judgment and Injunctive Relief. *Sac and Fox Tribe of the Mississippi in Iowa et al. v. Bear et al.*, 258 F.Supp.2d 938 (N.D.Iowa 2003). In its Complaint, the Walker Elected Council asked this court to issue a judgment settling a tribal dispute by declaring which group—the Walker Elected Council or the

Appointed Council—was in control of the Tribe and the casino revenues.

The court held a hearing on the motion for a temporary restraining order on April 10, 2003. On April 15, 2003, the court determined it lacked subject matter jurisdiction to decide the matter because it involved an intra-tribal dispute. The court, therefore, denied the Walker Elected Council's motion for a temporary restraining order and dismissed the action.

In another attempt to gain legitimacy, the Appointed Council held a meeting on April 14, 2003, at which the Appointed Council asked members of the Tribe to decide whether the members of the Walker Elected Council were "deemed persons of honor, law abiding, and of good character." The supporters of the Walker Elected Council boycotted the meeting. The 242 voters who attended the meeting overwhelmingly voted that the members of the Walker Elected Council were unfit to govern. The BIA, in response to further letters from the Appointed Council, continued to maintain that the Walker Elected Council was the federally-recognized governing body of the Tribe.

On April 30, 2003, the Chairman of the National Indian Gaming Commission (the "NIGC") issued a Notice of Violation addressed to the Elected and Appointed Councils. The Notice of Violation outlined violations of the IGRA and the Tribal–State compact. The violations all stemmed from the fact that gaming at the casino was "not being conducted by ... the governmental authority recognized by the Secretary of the Interior." The Notice of Violation required the Walker Elected Council, recognized by the Secretary of the Interior, to reassume control of the casino by May 2, 2003. The Notice of Violation described the procedures for administrative appeal.

The May 2, 2003 deadline passed with the Appointed Council still in control of the casino. On May 12, 2003, the Chairman of the NIGC issued a Temporary Closure Order. The Temporary Closure Order, by its terms, was effective immediately and explained the procedures available for expedited review by the Chairman and administrative appeal to the full NIGC.

The Appointed Council failed to seek review of the Temporary Closure Order and continued to operate the casino. On May 14, 2003, the Appointed Council filed suit in this court against the Chairman of the NIGC. The Appointed Council characterized its action as a Petition for Review of Agency Action and a Motion for Temporary Restraining Order. The Appointed Council specifically asked the court to set aside the Notice of Violation and Temporary Closure Order, or, alternatively, to suspend enforcement of the Temporary Closure Order pending administrative review by the NIGC. The United States moved to dismiss the action on the basis this court lacked subject matter jurisdiction because the Appointed Council had failed to exhaust its administrative remedies.

On May 16, 2003, the United States, on behalf of the NIGC, instituted a separate action against the leaders of the Elected and Appointed Councils. The United States' action was captioned as a Complaint for Injunctive Relief and a Motion for Temporary Restraining Order. The United States asked the court to enforce the Temporary Closure Order via a court order prohibiting the Elected and Appointed Councils from conducting gaming activities on Tribal Land "pending administrative action by the NIGC on whether the Temporary Closure Order should be made permanent."

On May 19, 2003, the Walker Elected Council moved to intervene in the Appointed Council's suit against the NIGC. The Walker Elected Council, as intervenor, as-

serted claims against the Appointed Council under 25 U.S.C. § 2710(d)(7)(A)(ii), seeking an order enjoining the Appointed Council from conducting gaming at the casino and requiring the Appointed Council to "surrender physical control of the Casino, its revenues, the tribal government buildings, and all bank accounts containing Tribal monies." The Walker Elected Council also asserted claims against the Chairman of the NIGC, seeking an order to enjoin the Chairman's enforcement of the Temporary Closure Order, to instruct the Chairman to remove the Appointed Council, and to order the Chairman to "limit the scope of punitive enforcement action to the illegal conduct of those individuals who are preventing the federally recognized Tribal government from operating the Tribe's Casino."

On May 19, 2003, the court consolidated the two cases and heard arguments on both cases, including the intervenor's motion. On May 22, 2003, the court dismissed the Appointed Council's claims for lack of subject matter jurisdiction because the Appointed Council failed to seek administrative appeal of the Chairman's Temporary Closure Order prior to seeking judicial review. The court granted the United States' motion for injunctive relief in the form of a preliminary injunction enforcing the Chairman's Temporary Closure Order. The court denied as moot all other motions, including the Walker Elected Council's intervenor claims.

On May 23, 2003, pursuant to this court's order, United States Marshals closed the casino. The Appointed Council and the Walker Elected Council subsequently appealed this court's orders. The United States Court of Appeals for the Eighth Circuit consolidated the appeals from this court's orders dated April 15, 2003 and May 22, 2003. On June 12, 2003, the Walker Elected Council appealed to the NIGC for administrative review of the Chairman's Notice of Violation and Temporary Closure Order, but the Walker Elected Council did not ask for a hearing. The Appointed Council did not file an appeal to the NIGC within the 30-day time period provided by the statute. 25 U.S.C. § 2713(b)(2).

On August 27, 2003, the Eighth Circuit Court of Appeals affirmed this court's April 15, 2003 dismissal of the Walker Elected Council's claims and this court's May 22, 2003 dismissal of the Appointed Council's claims and issuance of a preliminary injunction enforcing the Chairman's Temporary Closure Order. *In re: Sac & Fox Tribe of the Mississippi in Iowa / Meskwaki Casino Litig.*, 340 F.3d 749, 755–62 (8th Cir.2003). The Eighth Circuit Court of Appeals reversed this court's May 22, 2003 dismissal of the Walker Elected Council's intervenor claims and remanded to this court the issue of whether such reversal required modification of the preliminary injunction. *Id.* at 762–64.

On December 2, 2003, this court ordered the parties to brief the issue remanded to this court by the Eighth Circuit Court of Appeals. The United States filed a memorandum explaining it did not have a position on the issue remanded to this court because the action against the United States was dismissed in its entirety and the United States was no longer a party to the action. No other party filed a statement indicating its position as to the action which ought to be taken by this court on remand. The court, therefore, determined the parties abandoned their claims and closed the case.

On October 21, 2003, the Peters Election Board supervised a Tribal Council election and a recall election at the Meskwaki Settlement School on behalf of the Walker Elected Council. Complaint, Ex. C. One hundred eighty-one (181) tribal members cast their ballots at the school. *Id.* This

election resulted in three new members being elected to the Elected Council: Johannes (Joe) Wanatee, Sr., Troy Wanatee, and Galen Wanatee. *Id.* The vote to recall Walker Elected Council members Calvin Johnson, Lyle Walker, Frank Wanatee, Jr., and Aaron Walker failed. *Id.* The Peters Election Board certified the results of the election. *Id.* The Elected Council elected on October 21, 2003, consisting of Calvin Johnson, Lyle Walker, Frank Wanatee, Jr., Aaron Walker, Johannes (Joe) Wanatee, Sr., Troy Wanatee, and Galen Wanatee (the "Wanatee Elected Council"), was thereafter sworn into office.

Also on October 21, 2003, a "dissident group" which had boycotted the Peters Election Board's election procedure, held a separate election on behalf of the Appointed Council. *See id.,* Ex. D, at 3. This election was held at the Meskwaki Tribal Center. *Id.* Four hundred two (402) tribal members cast their ballots at the center. *Id.* This election resulted in three new members joining the Elected Council: Wayne Pushetonequa, Harvey Davenport, Jr., and Homer Bear, Jr. *Id.,* Ex. D at 4. The vote to recall Elected Council members Calvin Johnson, Lyle Walker, Frank Wanatee, Jr., and Aaron Walker passed. *Id.* The October 21, 2003 election at the Meskwaki Tribal Center resulted in four vacancies on the new Elected Council. *See id.,* Ex. D at 5.

By letter dated October 24, 2003, Larry Morrin, the BIA Regional Director, acknowledged the results of the October 21, 2003 elections at both the Meskwaki Settlement School and the Meskwaki Tribal Center. *Id.,* Ex. D. In an attempt to reconcile the results of both elections, Regional Director Morrin combined the election results: "It is questionable that the elections completely followed the Constitution, however, the election [sic] were so overwhelming in their reflection of the will of the membership of the Tribe, that minor procedural irregularities would not have affected the outcome. As stated earlier, to recognize the results of one election and not the other would disenfranchise the vote of 69% of the voting electorate." *Id.,* Ex. D at 5. Regional Director Morrin called for the appointment of a new Election Board and requested such new Election Board conduct a special election: "[W]e are requesting the Nomination Caucus and the Special Election to fill the vacancies resulting from the October 21 Recall Election, be handled by the representative group." *Id.* On November 4, 2003, a special election was held at the Meskwaki Tribal Center to fill the four vacancies on the Elected Council following the October 21 Recall Election. This election resulted in four new members being elected to the Elected Council: Keith Davenport, Deron Ward, Frank Black Cloud, and Ray Young Bear.

On November 7, 2003, in a letter addressed to "Tribal Council Members," Regional Director Morrin acknowledged receipt of the results of the November 4, 2003 recall election and special election held by the "dissident group." *Id.* at Ex. E. Regional Director Morrin stated that the federal government would recognize the Elected Council of the "dissident group," which consisted of: Homer Bear, Jr., Keith Davenport, Deron Ward, Frank Black Cloud, Ray Young Bear, Wayne Pushetonequa, and Harvey Davenport, Jr. (the "Bear Elected Council"). *Id.*

On October 28, 2003, the Peters Election Board appealed Regional Director Morrin's October 24, 2003 decision to create a new Election Board. *Id.* at Ex. F. The Peters Election Board also applied to stay further action by Regional Director Morrin. *Id.* In a memorandum dated November 12, 2003, Aurene Martin, Principal Deputy Assistant Secretary—Indian Affairs, advised the Honorable Katherine

Lynn, Chief Judge of the Interior Board of Indian Appeals, that she, Principal Deputy Martin, was assuming jurisdiction over the appeal. *Id.* at Ex. G. Principal Deputy Martin further noted that she had a copy of the October 28, 2003 Notice of Appeal filed by the Peters Election Board and an October 30, 2003 Pre–Docketing Notice which had been previously filed in the case. *Id.* Principal Deputy Martin advised that she would "follow this notice by sending the parties a notice of the procedures to be followed and a briefing schedule, which will include dates of filings and directives on ex parte communications." *Id.*

By memorandum dated December 11, 2003, Claricy Smith, the Acting Director for the Midwest Regional Office of the BIA advised Principal Deputy Martin that a stay pending the Peters Election Board's appeal should not be granted because a stay would: (1) be detrimental to the membership and self-government of the Tribe; (2) negatively impact economic development by resulting in continued closure of the Tribe's casino; (3) risk loss of the Tribal–State Gaming Compact; and (4) hinder the Tribe's ability to fund its government. *Id.* at Ex. H. A copy of this memorandum was not shared with the Peters Election Board. On December 18, 2003, Principal Deputy Martin issued her decision affirming Regional Director Morrin's decision to recognize the Bear Elected Council. *Id.* at Ex. A. Principal Deputy Martin did not receive any briefing, argument, or other input from the Peters Election Board.

## II. PROCEDURAL BACKGROUND

The Peters Election Board filed this action on January 2, 2004. In its Complaint, the Peters Election Board objects to the BIA's recognition of the Bear Elected Council on the grounds that the Bear Elected Council claims legitimacy through a non-constitutional process involving elections held outside the requirements of the Tribe's constitutional scheme and without being sworn into office as required by the same constitutional provisions. The Peters Election Board argues: (1) the Wanatee Tribal Council was duly elected and sworn into office during the October 2003 elections held pursuant to the Tribe's constitutional requirements; (2) the Peters Election Board suffered an injury in fact as the performance of its duties as expected and required under the Tribe's Constitution has been rendered meaningless by improper agency action by the BIA; and (3) the wrongful action by the BIA has made it impossible for the Peters Election Board to perform its duties required by the Tribal Constitution and as authorized and directed by the Elected Council which appointed it.

In its Complaint, the Peters Election Board asserts three counts. In Count I, the Peters Election Board seeks judicial review of the BIA Regional Director's and the Principal Deputy's decision under the Administrative Procedure Act, 5 U.S.C. § 702 (the "APA"). In Count II, the Peters Election Board asks the court for a declaratory judgment that the BIA unlawfully interfered with tribal elections. Count III seeks a mandamus requiring the BIA to recognize, for government-to-government purposes, the Wanatee Elected Council.

On March 8, 2004, Defendants filed a motion to dismiss the Peters Election Board's Complaint. On June 10, 2004, the court granted in part and denied in part Defendants' motion to dismiss. Specifically, the court ordered Counts II and III to be dismissed because the court lacks jurisdiction over those claims.

On September 15, 2004, approximately nine and one-half months after the lawsuit was filed, the Bear Elected Council appointed a new group of individuals to the Election Board. This group consists of

Virginia Eagle, Harlan Dean Brown, Sampson Keahna, Vincent Derril, Adrian Mauskemo, Curtis Dale Seymour, and Natalie Wanatee (the "Eagle Election Board").

On October 5, 2004, the Eagle Election Board filed the instant Motion to Dismiss the Peters Election Board's Complaint. The Eagle Election Board alleges that, as a matter of Tribal law, an Election Board does not have the power to bring this or any other lawsuit.

On October 18, 2004, the Peters Election Board resisted the Eagle Election Board's Motion to Dismiss. The Peters Election Board did not respond to the Eagle Election Board's contention that pursuant to Tribal law, no Election Board can file suit in federal court; the Peters Election Board's only response to such allegation was to claim the court has already decided the Peters Election Board has standing to bring this lawsuit. The same date, Defendants responded to the Eagle Election Board's Motion to Dismiss. On October 22, 2004, the Eagle Election Board replied to the Peters Election Board's resistance. On October 25, 2004, the Peters Election Board replied to Defendants' response.

The court held a hearing on such motion October 26, 2004. Attorneys Fred Dorr and Michael Mason [2] represented the Peters Election Board. Attorneys Steven Olson and Wilford Stone represented the Eagle Election Board. Assistant United States Attorney Robert Butler and Assistant Solicitor Scott Keep represented Defendants. The court heard the parties' arguments and indicated a written ruling would follow.

### III. ANALYSIS

In its Motion to Dismiss, the Eagle Election Board raises the issue of whether any Election Board has the authority, under the Tribe's Constitution and common law, to file a lawsuit in federal court. If such authority exists, the Eagle Election Board further asks the court to decide which Election Board—the Peters Election Board or the Eagle Election Board—is the proper plaintiff in this action.

The court finds the relief requested in the Eagle Election Board's motion necessarily requires an interpretation of the Tribe's Constitution and resolution of an intra-tribal dispute. The court is without jurisdiction to resolve intra-tribal disputes requiring interpretation of a tribal constitution. *See Smith v. Babbitt*, 100 F.3d 556, 559 (8th Cir.1996) (ruling federal courts do not have jurisdiction over intra-tribal disputes); *Runs After v. United States*, 766 F.2d 347, 352 (8th Cir.1985) (affirming district court's holding that "resolution of ... disputes involving questions of interpretation of the tribal constitution and tribal law is not within the jurisdiction of the district court"); *Goodface v. Grassrope*, 708 F.2d 335, 339 (8th Cir.1983) (opining where tribe has a "functioning tribal court, which the parties recognize as a court of competent jurisdiction to resolve tribal election disputes ... [it] is essential that the parties seek a tribal remedy ... [because] substantial doubt exists that federal courts can intervene under any circumstances to determine the rights of the contestants in a tribal election dispute."). The court shall therefore dismiss the Peters Election Board's claim contained in Count I of the Complaint.

This may appear to be inconsistent with this court's June 10, 2004 Order Regarding Defendants' Motion to Dismiss, in which the court held it has subject matter jurisdiction over the Peters Election Board's claim seeking judicial review of the BIA's action. At that time, the court determined the court has jurisdiction under 28 U.S.C.

---

**2.** Mr. Mason appeared by telephone.

§ 1331 to review, pursuant to the Administrative Procedures Act, the action taken by the BIA under the arbitrary or capricious standard enunciated in 5 U.S.C. § 706(2)(A). The court also held the Peters Election Board had established it had standing to file suit against the BIA under Article III of the United States Constitution.

However, when the Eagle Election Board filed its motion to dismiss, the court was presented with two intra-tribal disputes which questioned the Peters Election Board's authority to file suit under the Tribe's Constitution: (1) whether any election board has the authority under the Tribe's Constitution and common law to file suit on behalf of the Tribe; and (2) which election board is the proper plaintiff in this action. As the preceding analysis shows, this court lacks jurisdiction over these intra-tribal matters. Jurisdiction over these issues lies solely with the tribal court. Therefore, the court finds the suit must be dismissed to allow the tribal court to resolve the intra-tribal issues that have now become dispositive in this case.

## IV. CONCLUSION

**IT IS ORDERED:**

(1) The Eagle Election Board's Motion to Dismiss (docket no. 38) is GRANTED.

(2) Plaintiff Sac & Fox Tribe of the Mississippi in Iowa Election Board's Complaint is DISMISSED without prejudice.

(3) All pending motions are denied as moot.

**SO ORDERED.**